97 So.2d 837

**Powhatan ROACH**

v.

**STATE.**

**8 Div. 64.**

Court of Appeals of Alabama.

Oct. 22, 1957.

H. T. Foster, Scottsboro, for appellant.

John Patterson, Atty. Gen., and Jas. Webb, Asst. Atty. Gen., for State.

**272**

CATES, Judge.

Roach appeals from a judgment of conviction in the Jackson County Court of Law on a misdemeanor charge of selling prohibited liquors (Code 1940, T. 29, § 98). He was found guilty and fined $50 by a jury to which the court added six months' hard labor for the county.

The State's case was made out by the testimony of Roy Graves, a criminal investigator of the Internal Revenue Service. Mr. Graves first saw Roach on February 28, 1956, at Roach's home at Hollywood, Alabama. It was about six o'clock in the evening. After Graves drove up, Roach came out on the front porch. Graves could see him in the light of an overhead electric light. Graves had an informer with him. Graves's testimony continued:

"The gentleman with whom I was riding went to the porch of Powhatan Roach's and asked for a pint of non tax paid whiskey. Mr. Powhatan Roach had a young negro boy with him at the time. He instructed the young fellow to go in the house and get the whiskey. The man went in the house and returned with the whiskey and gave it to the gentleman with whom I was riding at that time. The gentleman with whom I was riding at that time had previously been given a five dollar bill by me. He paid Mr. Roach the five dollar bill and Mr. Roach gave it to the young negro boy and the negro boy went in the house and returned with the change and handed it back to Mr. Roach, who looked at it and handed it to the gentleman with whom I was riding. He took the pint of whiskey and left."

On cross examination Graves related that he was in the cab of a truck some twenty to thirty yards from Roach's porch; that he heard some small talk between his decoy and Roach; and then, upon the informer asking for a pint of whiskey, Roach told a young negro boy, "Go in the house and get a pint of whiskey."

Roach's counsel demanded that Graves give the name of his decoy which Graves refused to do, and in this he was sustained by the trial judge.

Roach took the stand and made out a case of an offense by the negro boy who fetched the pint and took the five dollar bill. Roach further testified that on the evening in question he had been in bed and some men came to his house making such a "fuss" that he got up to see who it was. On his cross examination, part of the colloquy went:

"Q. They did buy some whiskey up at your house? A. Bought from the boy there.

"Q. What is the name of the boy? A. James something, don't know his name. My granddaughter's husband.

"Q. James and you don't know what his name is? A. No.

"Q. He was living at your house? A. Who was living there?

"Q. He was then? A. Yes, came down to take care of me while I was getting up with pneumonia."

Roach has raised the same question touching the publication of the proposed local bill leading to the 1939 Act creating the former Jackson County Court, Loc. Acts 1939, p. 368, as was decided adversely to the contention of the defendant in Weeks v. State, ante, p. 231, 97 So.2d 161.

The next question presented is based on the refusal of Graves to name his decoy. We do not believe an employee of the Federal Government carries about him a mantle such as the Roman citizenship that shielded the Apostle Paul from the municipal law. Hence, we do not conceive that the superintendency over a Federal agent's testimony asserted in Rea v. U. S., 350 U. S. 214, 76 S.Ct. 292, 100 L.Ed. 233, operates

to such an extent as to make the principle (of requiring the disclosure of the name of a participating decoy) in Roviaro v. U. S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, become the law of Alabama when a Federal witness testifies in a state court regarding a state crime. Nor do we believe Parsons v. State, 251 Ala. 467, 38 So.2d 209, applies to a Federal agent who apparently makes himself a voluntary prosecution witness.

As to whether or not, in the furtherance of the right of unfettered cross examination, any public officer can refuse to disclose the identity of a decoy or of an agent provocateur—as was held by the Georgia Court of Appeals in Crosby v. State, 90 Ga. App. 63, 82 S.E.2d 38 (see also State v. Cooper, 2 N.J. 540, 67 A.2d 298)—we do not need to decide.

The transcript of evidence shows the following occurred during the argument of the case to the jury:

"Mr. Campbell: We object to that argument, your Honor, the statement, 'The Judge said if I would plead him guilty, he would put him on probation and if he was tried and convicted, he was going to send him off, and the Jurors heard him.'

"The Court: I didn't say it in the first place, and the Jurors didn't hear it, and it is not proper for him to say it.

"Mr. Foster: You said if I would bring him around and plead him guilty and my answer to you was, 'No, I never plead anybody guilty, when they tell me they are not guilty.'

"The Court: Cool off.

"Mr. Foster: I am not mad. I am cool as a cucumber.

"The Court: Let this go in the record. He came down the other day, Powhatan—

"Mr. Foster: Not talking about something Powhatan did.

"The Court: For the record.

"Mr. Foster: We object to anything that didn't happen here in the Court House.

"The Court: Keep quiet, I am going to put it in the record.

"Mr. Foster: Don't put in the record—

"The Court: Sit down or I will find you in contempt of Court. If you don't sit down, you will be in contempt of Court.

"Mr. Foster: Get through, I am trying my best to keep from showing contempt.

"The Court: Keep quiet until I get through.

"Mr. Foster: Stay within the record of what was said today.

"The Court: No, I am not going to limit it to that. I am going to get the other in the record.

"Mr. Foster: I know.
"The Court: I am talking.

"Mr. Foster: Can I answer?

"The Court: When I get through.

"The Court: Powhatan came in to see me the other day and wanted to plead guilty if I wouldn't send him off.

"Mr. Foster: To what?

"The Court: This case and another case. He would plead guilty if I would agree not to send him off. I wouldn't tell him what I would do. I am telling you now and I told you this morning. I called you up this morning and I told you if you would plead the negro, plead the Defendant guilty, if he would plead guilty on the theory he was guilty. I don't want any man pleading guilty who is not guilty, understand. If he plead guilty, I would

give him a sentence and wouldn't send him off.

"Mr. Foster: What?

"The Court: And I told you if you went on into trial of the case and he was found guilty, I would send him off, telling you that now so you would understand it.

"Mr. Foster: Told you you wouldn't too.

"Mr. Foster: We object to all that on the grounds that it is prejudicial and move for a mistrial again.

"The Court: Go on.

"Mr. Foster: Are you going to grant a mistrial?

"The Court: No.

"Mr. Foster: We except to the Court's overruling of our motion for a new trial."

 We consider the remarks of the court, though somewhat engendered by the heat of the occasion, to be improper, because, among other things, the statement, "Powhatan came in to see me the other day and wanted to plead guilty if I wouldn't send him off," should not have been made in the presence of the jury, since (1) the court's statement can only be considered an attempt by the trial judge to make himself a witness in the case, and (2) even if the statement had come from a sworn witness on the trial, its admission would have been reversible error.

An attempt to compromise a criminal prosecution is not ordinarily admissible under the theory of its being an admission of guilt, unless it is unequivocally in the nature of a confession. Wilson v. State, 73 Ala. 527; Sanders v. State, 148 Ala. 603, 41 So. 466; Fuller v. State, 34 Ala.App. 211, 39 So.2d 24; see also dissenting opinion of Simpson, J., in Wilson v. State, 31 Ala.App. 560, 19 So.2d 777, adopted in Wilson v. State, 246 Ala. 129, 19 So.2d 780. Moreover, the discussion before the jury as to the punishment of the defendant by imprisonment if convicted after a plea of not guilty not only does not comply with the plain provisions of the probation law (Code 1940, T. 42, § 19, as amended), but also tends to confuse the jury, since for this offense the jury has no concern with the imposition of imprisonment. For analogous errors, see Demetree v. United States, 5 Cir., 207 F.2d 892; Lawley v. State, 264 Ala. 283, 87 So.2d 433; McCray v. State, 261 Ala. 275, 74 So.2d 491.

For the above error, the judgment of the court below is due to be reversed and the cause remanded.

Reversed and remanded.