498 So.2d 1297 (1986)
John Edward TRAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. BF-344.
District Court of Appeal of Florida, First District.
November 14, 1986.
Rehearing Denied January 19, 1987.
*1298 Michael E. Allen, Public Defender, and Steven L. Bolotin, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Norma J. Mungenast, Asst. Atty. Gen., Tallahassee, for appellee.
DAVEY, P. KEVIN, Associate Judge.
John Edward Traylor appeals from his conviction for second-degree murder, alleging a number of grounds for reversal.
On June 7, 1980, Tina Nagy was found stabbed to death in her Jacksonville apartment. On June 11, Traylor was charged by information with second-degree murder in connection with the crime but no arrest was made. On August 5, 1980, the body of Debra Beason, a murder victim, was found in Birmingham, Alabama. Traylor was arrested for the latter crime by Alabama police on August 6 under the name of "Jason Riley." He attended the equivalent of a first appearance, at which he requested and received the appointment of counsel. His attorney instructed the Alabama police *1299 not to speak with his client in his absence, and told Traylor not to speak with them.
On August 20, during a computer check of "Riley's" fingerprints, the Alabama police discovered his true identity and that he was wanted in Florida for the Nagy murder. The Jacksonville authorities were notified and Detective Warren flew to Birmingham to question Traylor on the Florida crime. Warren was never informed that Traylor had requested counsel on the Alabama charge nor of the Alabama attorney's instructions regarding interrogation.
Traylor was brought from his cell by the police and was read, and signed a form indicating he understood, his Miranda rights. Warren commenced questioning him about the Florida crime, and elicited an oral confession thereto which Traylor later committed to paper. Warren also questioned him regarding the Alabama murder, to which he orally confessed; the arrival of Traylor's counsel prevented him from writing out the Alabama confession.
Traylor was tried and convicted in Alabama for the Beason murder. On March 11, 1983, he was delivered into the temporary custody of the Florida authorities pursuant to the 1980 information charging second-degree murder. On March 17, the State obtained an indictment charging Traylor with first-degree murder. The State prosecuted him under this latter document.
On August 5, 1983, Traylor moved to suppress the Florida and Alabama confessions (which the State proposed to use as part of its similar fact, "Williams rule," evidence). At the August 11 hearing, Traylor relied on Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), to argue that adversary proceedings against him had commenced in both Florida (the 1980 information) and Alabama (the first appearance), entitling him to counsel during police interrogation. While acknowledging that the right could be waived, Traylor argued that he had not affirmatively done so and his confessions had therefore been obtained in violation of his Sixth Amendment right to counsel.
The motion was denied, the trial court finding first that the 1980 information had not commenced adversary proceedings in that the State had not intended to use it to institute a "then and there prosecution." The court further found that, if adversary proceedings had commenced, "the totality of the circumstances" demonstrated that Traylor had waived his right to counsel.[1]
The case proceeded to trial, where the oral and written Florida confessions were introduced by the State. Also presented were two letters written by Traylor to his Alabama and Florida judges confessing to both of the murders and requesting to be put to death, over defense objections that the letters were inadmissible offers to plead guilty. The State was also permitted to introduce over objection similar fact evidence of the Beason murder, accompanied by a limiting instruction that such evidence was to be considered only with regard to Traylor's intent (he contended that the Nagy killing had been "in the heat of passion," while the State contended that it was premeditated), plan and motive. Evidence was also introduced that Traylor had threatened Nagy's life prior to the murder, that his hair had been found on her body and that his bloody palmprint was found on the wall near the body. The jury returned a verdict of guilty to second-degree murder.
The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." This right attaches only at or after the initiation of adversary judicial proceedings against the defendant. U.S. v. Gouveia, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 153 (1984). One looks to state law to determine when adversarial proceedings *1300 have commenced. Felder v. McCotter, 765 F.2d 1245, 1247 (5th Cir.1985). The Florida Rules of Criminal Procedure provide that "prosecution shall be solely by indictment or information." Rule 3.140(a), Fla.R. Crim.P. (emphasis supplied). In Anderson v. State, 420 So.2d 574 (Fla. 1982), the Florida Supreme Court held that an indictment filed against a defendant then located outside of Florida constituted commencement of adversary proceedings sufficient to invoke the Sixth Amendment right to counsel, rendering inadmissible statements obtained by the police in the absence of counsel. Anderson at 576.
Here, it is undisputed that an information charging Traylor with second-degree murder had been filed against him prior to his Alabama conversation with Warren. The State cites no authority for the novel proposition that there is a special "brand" of information useful only for placing defendants in the national crime computer. On the contrary, Traylor could have been prosecuted under that information, and in fact was removed from Alabama to Florida under its authority. Therefore, his right to counsel had attached at the time he confessed to the Florida crime.
Further, at the time of the confessions, Traylor had been afforded a first appearance on the Alabama charge and had then requested and received the assistance of counsel. In Michigan v. Jackson, 475 U.S. ___, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the U.S. Supreme Court held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid" (emphasis supplied).[2] The Court found that it was required to construe broadly the defendant's request for counsel at the outset of the adversary proceedings against him to encompass every critical stage thereafter, including interrogation; and that a Miranda waiver was ineffective to change that. Therefore, it is clear that the confession to the Alabama charge was obtained in violation of Traylor's right to counsel, despite the trial court's finding of a waiver.
Waiver is not, however, similarly barred with regard to the confession in the Florida case. Although adversary proceedings had begun against Traylor, attaching his Sixth Amendment right to counsel, he had never been arraigned, never attended any similar proceeding on that charge and never requested counsel on the Florida charge. The arraignment and request for counsel occurred only on the Alabama charge. His Alabama counsel did not know of the Florida charge and was never retained to represent Traylor thereon. Therefore, Traylor could properly have waived his Sixth Amendment right to counsel with regard to the Florida interrogation.
To establish a waiver of the Sixth Amendment right to the assistance of counsel, it is "incumbent upon the State to prove an intentional relinquishment or abandonment of a known right or privilege." Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (emphasis supplied). Courts must indulge in every reasonable presumption against waiver in assessing the totality of the circumstances to determine whether the purported waiver was voluntary and intelligent. Wyrick v. Fields, 459 U.S. 42, 46, 103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982). Even though Traylor was given and indicated that he understood his Miranda rights, that is insufficient to demonstrate waiver. The State must prove not only that a defendant understood his right to counsel but that he intentionally relinquished it. Brewer, 430 U.S. at 404, 97 S.Ct. at 1242.
We cannot agree with the trial court that Traylor intentionally relinquished that right in this case. The court infers relinquishment from Traylor's failure to affirmatively invoke the right to counsel before talking to the police. However, *1301 the right had already attached with the commencement of adversary proceedings and no invocation was necessary to bring it into being. See U.S. v. Gouveia, supra; Rule 3.140, Fla.R.Crim.P. Based on the absence of a valid waiver of Sixth Amendment rights, we must hold the Alabama confession to the Florida crime inadmissible as well.
The ultimate issue remains, however, as to whether this constitutional error was harmful. Such error may be harmless in the face of other overwhelming evidence of guilt. Kirkland v. State, 478 So.2d 1092 (Fla. 1st DCA 1985). Here, aside from the confessions, there was evidence of Traylor's death threats prior to the murder as well as physical evidence placing him at the scene of the crime. There were also the letters he sent to his judges acknowledging his guilt in both murders. Aside from this evidence, which we find sufficient to support the second-degree murder conviction, it is indicative of harmless error that despite the confessions the jury did not find Traylor guilty of premeditated murder as sought by the State. Therefore, although the confessions should have been suppressed, we find that under these circumstances the error was harmless and the conviction should not be reversed.
Traylor next argues that evidence of the Alabama crime should not have been admitted as similar fact evidence, because the confession thereto should have been suppressed and because there were not sufficient factual similarities between the two crimes. With regard to the first ground, the State presented live testimony as to the factual circumstances of the Alabama murder in addition to the description thereof found in the inadmissible confession. As to the second contention, similar fact evidence of other crimes is admissible when relevant to prove a material fact in issue, such as intent. Section 90.404(2)(a), Florida Statutes (1983). While there must be more than a general likeness between the similar act and the crime charged, Zeigler v. State, 404 So.2d 861 (Fla. 1st DCA 1981), absolute factual identity is not required. Townsend v. State, 420 So.2d 615, 617 (Fla. 4th DCA 1982).
There were sufficient factual similarities herein so as to render evidence of the Beason murder admissible, if relevant to the proof of one of the material facts set forth in Section 90.404(2)(a). Here, intent was clearly at issue, as Traylor contended that the crime was one of passion contrary to the State's contention of premeditation. We find, as did the trial court, that this evidence was relevant to the proof of that issue.
Finally, Traylor argues, pursuant to Section 90.410, Florida Statutes (1983), that the inculpatory letters he wrote to his trial judges should have been held inadmissible as offers to plead guilty. However, there is no evidence that these letters were anything other than "unsolicited, unilateral statements" which do not fall under the aegis of this evidentiary statute. Bottoson v. State, 443 So.2d 962, 965 (Fla. 1983). Traylor did not object to the letters on the second ground urged on appeal, namely that their prejudicial effect outweighed any probative value. Therefore, we do not address that issue.
The defendant's conviction is accordingly AFFIRMED.
WENTWORTH, J., concurs.
NIMMONS, J., concurs with opinion.
NIMMONS, Judge, concurring,
I concur in the result, but do not embrace all of the majority's reasoning.
Although I agree with the majority that the defendant's Sixth Amendment right to counsel had attached with respect to the Florida murder upon the filing of the information[1] and issuance of the capias, I do not agree with the implication from the language of the majority opinion that there is an absolute bar to the waiver of the *1302 Sixth Amendment right to counsel where adversary proceedings have begun. I do not believe such a proposition is supported by Michigan v. Jackson, 475 U.S. ___, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).
A defendant may waive his right to counsel under either the Fifth or Sixth Amendments at any time if there is "an intentional relinquishment or abandonment" of those rights. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (construing waiver of Sixth Amendment right to counsel); Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (construing waiver of Fifth Amendment right to counsel during custodial interrogation). The question in any particular case is whether there has in fact been a waiver.
In Jackson, the Supreme Court held that where the police initiated questioning after the person had requested counsel at arraignment, the fact that the person proceeded to answer questions or make statements after being given Miranda[2] warnings was insufficient as a waiver where the Sixth Amendment right to counsel had attached.
In determining whether there has been a waiver of Sixth Amendment right to counsel, the courts have looked to a variety of factors including whether a request for counsel has been made[3], whether the defendant or police initiated the inculpatory communication[4], whether police have explained defendant's right to counsel to him[5], and the amount of time a defendant is isolated from his counsel with police investigators.[6]
As to the Alabama murder confession, there can be no doubt that Traylor did not waive his Sixth Amendment right to counsel. Adversary proceedings had commenced, he had requested and been appointed counsel, and the incriminating statements were the result of police-initiated interrogation. The facts and circumstances fall within the proscription of Jackson.
The facts surrounding the Florida murder confession also lead inescapably to the conclusion that Traylor did not waive his Sixth Amendment right to counsel as to that confession. Although he had not requested counsel in the Florida case,[7] neither did he do any act sufficient to waive that right. He signed a form indicating that he understood his Miranda rights, but it did not state that he waived them. He merely acquiesced in the police-initiated interrogation. Where adversary proceedings have commenced and the Sixth Amendment right to counsel has attached, no waiver can be inferred from such circumstances.
Nevertheless, I concur in the finding that, in light of the other significant evidence of guilt,[8] the admission of these confessions was harmless error.
*1303 With respect to the "Williams Rule" issue, I concur with the majority that the testimony regarding the Alabama murder was admissible to prove that the homicide charged was not culpable negligence, as the defense urged, but rather murder. See Justus v. State, 438 So.2d 358 (Fla. 1983).
Finally, for the reasons stated in the majority opinion, I agree that the letters written to the Florida and Alabama judges were admissible.
NOTES
[1] This finding was based on the fact that although Traylor had requested and received counsel on the Alabama charge and knew he was represented thereon, he never personally invoked his right to counsel on that charge or on the Florida charge; and further chose to disregard his counsel's advice not to talk to the police.
[2] The trial court did not have the benefit of this holding in considering the suppression motion.
[1] Felder v. McCotter, 765 F.2d 1245 (5th Cir.1985); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Robinson v. State, 351 So.2d 1100 (Fla. 3rd DCA 1977).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Michigan v. Jackson, 475 U.S. at ___, fn. 6, 106 S.Ct. at 1409, fn. 6, 89 L.Ed.2d at 640, fn. 6.
[4] E.g. United States v. Deloy, 421 F.2d 900 (5th Cir.1970).
[5] E.g. United States v. Hale, 562 F.2d 336 (5th Cir.1977).
[6] Anderson v. State, 420 So.2d 574 (Fla. 1982). In Anderson, although the defendant spoke freely and apparently voluntarily to police officers, he did so after being in a car with the officers for three days while being transported from Minnesota to Florida. The Florida Supreme Court held that although the defendant initiated the communication, under the circumstances of his extended isolation from counsel, such circumstances did constitute a waiver of his Sixth Amendment right to counsel.
[7] The majority discusses defendant's request for counsel in the Alabama charge as if it constituted a request for counsel on both charges. I would not so construe the Alabama request where the charges related to separate crimes occurring in different states a month apart. The crimes are not sufficiently related to create an inference of request for counsel in the Florida case. See Delap v. State, 440 So.2d 1242 (Fla. 1983).
[8] Physical evidence confirmed that the defendant was the perpetrator of the crime charged, and he wrote unsolicited letters to judges in Alabama and Florida confessing and requesting that he be put to death.