614 So.2d 605 (1993)
Orthenell Alfredo RUSSELL, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3043.
District Court of Appeal of Florida, First District.
February 18, 1993.
*606 Jeffrey M. Leukel, Starke, for appellant.
Robert A. Butterworth, Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Russell appeals his conviction of sale of a counterfeit drug. He raises two alleged trial errors, only one of which requires extensive discussion. We reverse.
The prosecution of Russell arose out of an attempted controlled buy of narcotics conducted by Sheriff's Deputy Jett, which involved the use of confidential informants. Appellant himself had also worked for officer Jett as a confidential informant, and had been paid money for arrests made through his efforts. On the occasion in question, appellant allegedly sold fake crack cocaine to Arno Wright, a confidential informant who had been charged with an offense and was "working it off" by assisting officer Jett in making drug arrests. Although officer Jett was present at the alleged sale, he was concealed in an automobile, and did not personally observe the transaction between appellant and Wright. Later, however, according to officer Jett, appellant told him that he had "ripped off" Wright by selling him fake crack cocaine, and that appellant was laughing, that he thought it was funny and that he had not done anything wrong. Appellant testified at trial, asserting that he had talked to Wright in order to develop information regarding drug deals, because he thought that was what he was employed to do. He denied selling anything to Wright.
Prior to cross-examination of appellant, the state attorney advised the court and defense counsel that he intended to introduce a letter received from appellant the day before trial. The letter stated:
Dear Mr. Grimm,
If I could be sentenced under the regular offense and you agree to give me three years and all my county time I will take it and won't go to trial. If you agree to do this. I look forward to hearing from you soon.
The defense objected to the introduction of the letter. The prosecution contended the letter was an unsolicited and self-initiated communication by appellant, and was not privileged under the "plea discussion" rule. The prosecution cited to the trial court the case of Blake v. State, 332 So.2d 676 (Fla. 4th DCA 1976), assuring the trial court that Blake was still "good law." After consideration of Blake, the trial court overruled the defense objection. The assistant state attorney questioned appellant about the letter, and required appellant to read the letter to the jury. Appellant testified that no one made him write the letter, and that he had written it on his own. He also denied that he had done anything wrong, but that he was willing to go to prison because the odds were against him. On redirect examination, appellant testified that he had had discussions with his counsel about what might happen to him at sentencing because of his felony record, and that it was this concern that caused him to write the letter to the prosecutor.
*607 After the defense rested, appellant moved for a mistrial urging that this letter was nothing more than an offer to plead guilty inadmissible under section 90.410, Florida Statutes, and constituted plea negotiations made inadmissible by rule 3.172(h), Florida Rules of Criminal Procedure. The court reviewed the case law, including Traylor v. State, 498 So.2d 1297 (Fla. 1st DCA 1986), approved, 596 So.2d 957 (Fla. 1992) and denied the motion. The court observed that the letter itself was not in evidence, and would not go to the jury. However, during closing argument the prosecutor read the letter to the jury and asked:
Are those the words of an innocent man? Absolutely not. The defendant knows he is guilty, and got on the stand and lied about his guilt, and when confronted with this he came up with some crazy excuse: Well, the odds were against me so I came up with this thing. This in and of itself clearly shows the defendant is guilty.
The jury returned a verdict finding appellant guilty as charged, and he was sentenced as an habitual violent felony offender to eight years incarceration with a mandatory five years.
Appellant urges on appeal that contrary to assertions by the state, the letter from appellant was not admissible as a unilateral communication unconnected with plea negotiations. Appellant points out that plea negotiations had been ongoing, noting that on the Monday before the trial on Thursday, the state had offered a five-year prison sentence in return for a plea of guilty. The state, on the other hand, contends that it did not solicit the pro se letter from appellant to Grimm; that appellant could not have reasonably believed that his gratuitous, unilateral letter, written one day before the scheduled trial date  after plea negotiations had broken off  mentioning a prison term two years less than that offered by the prosecutor, was made "in connection with plea negotiations." The state here continues to insist that the case of Blake v. State, supra, upon which the trial court partly relied in admitting evidence of the letter, is "factually indistinguishable" from the instant case. The state also urges that Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983) is applicable, pointing out that in Stevens, the supreme court noted that whether a defendant's subjective expectation of negotiating a plea is reasonable depends upon whether the state has indicated a willingness to plea bargain, and has in fact solicited the statement in question from the defendant. The state further contends that even if the court erred in allowing appellant's impeachment with the letter, the error was harmless.
Our examination of the applicable rules, the evidence code, and the cases cited, convinces us that the state's position in this case is erroneous, and that it was error to allow the state to introduce appellant's offer to plead guilty. At the outset, we observe that the state's reliance upon Blake v. State at trial, and here, is misplaced. In that case the trial court allowed the introduction of a letter from the defendant written to the state attorney stating the following:
Please, sir, I hope and pray you will find it in your heart to talk to Judge R. McIntosh to give me one more chance and put me on probation?
The Blake opinion cites as authority only one case, Ivey v. State, 132 Fla. 36, 180 So. 368 (1938). The Ivey opinion contains no facts or discussion relevant to the issue involved here. The Blake opinion recites further that the letter was not privileged as a plea discussion under rule 3.171, Florida Rules of Criminal Procedure. That rule, at the time of the Blake opinion, contained provisions encouraging the prosecuting attorney to engage in plea discussions with the defendant's counsel, or with the defendant, if unrepresented, and provided further:
(d) Discussion and Agreement Not Admissible. If the defendant pleads not guilty, no mention of any prior proceedings hereunder shall be admissible against him.
As it existed at the time of the Blake decision, the subparagraph dealing with inadmissibility *608 concerned only discussions and agreements within the contemplation of the rule. Shortly thereafter, the rules regarding plea negotiations were expanded, and the subparagraph dealing with inadmissibility became rule 3.172(h), which provides as follows:
(h) Except as otherwise provided in this Rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
This amendment to the rules became effective July 1, 1977. Under the rule as it existed when Blake was decided, the court might well have been justified in requiring a stronger showing of ongoing plea negotiations before ruling that an incriminating communication made by the defendant should be held inadmissible. Unlike its predecessor, under the amended rule, subparagraph (h), evidence of "an offer" of a plea of guilty, later withdrawn, is inadmissible. Also, for the first time, the rule appeared to make some distinction between an "offer" to plead guilty, and "statements" made in connection with an offer or plea of guilty. As will be seen in the following discussion, this distinction may be one of considerable consequence in ruling upon the admissibility of a particular communication.
Perhaps more important in the evolution of the rule against admissibility of communications involved in plea negotiations was the enactment of section 90.410, Florida Evidence Code, in 1978:
Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under Chapter 837.
Under a literal reading of the statute, an "offer to plead guilty" is inadmissible. Also under the statute, evidence of "statements made" in connection with any pleas or offers is inadmissible. Defense counsel cited this statute and urged to the court below that appellant's offer to plead guilty was protected under the express wording of the statute. Defense counsel also argued below, as he does here, that under the circumstances, there having been plea discussions just a few days before trial, appellant's letter to the prosecuting attorney was a direct result and in furtherance of these negotiations and discussions, and as such fell within the protection of the rule holding inadmissible evidence of plea negotiations between the defense and the prosecution.
We tend to agree that under the circumstances appellant's letter could, and very probably should be considered a part of ongoing plea negotiations. However, we find it unnecessary to dwell at length upon whether the letter was "unilateral," or "unsolicited," terms which apply to and perhaps have greater significance in cases involving "statements" made in connection with plea offers or negotiations. Importantly, we note that none of the cases relied upon by the state, in which evidence was ruled admissible, involve simply offers to plead guilty in return for some concession as was sought by appellant in this case. In fact, all of the cases relied upon by the state are concerned with statements in the form of admissions or confessions of incriminating facts, and are thus to be examined under the "statements" component of the statute, rather than the "offer to plead guilty" provision.
Thus, in Stevens v. State, supra, the evidence sought to be excluded by the defendant was not mere evidence of his offer to plead guilty, but instead, was an incriminating statement of fact made in the presence of a polygraph examiner just prior to a lie detector test defendant had agreed upon as a condition of the state's acceptance of a plea to a lesser offense than that charged. The supreme court held that the incriminating statement was not made in connection with plea negotiations so as to be excludable under the statute. In so holding, the court made use of the "two-tiered analysis" utilized by the court in *609 United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir.1978) (en banc), under which it is first determined whether the accused "exhibited an actual subjective expectation to negotiate a plea at the time of the discussion," and secondly, "whether the accused's expectation was reasonable given the totality of the objective circumstances." Id. at 1366. Further, said the Florida Supreme Court:
Whether a defendant's subjective expectation of negotiating a plea is reasonable depends on whether the state has indicated a willingness to plea bargain and has in fact solicited the statement in question from the defendant. Unsolicited, unilateral utterances are not statements made in connection with plea negotiations. See Blake v. State, 332 So.2d 676 (Fla. 4th DCA 1976). (Emphasis added).
Utilizing the Robertson analysis, the Stevens court determined that although the polygraph examination was arranged so that appellant's version of the criminal episode could be substantiated, and although this was an agreed part of the negotiations, "appellant's spontaneous, unilateral statement was not connected to those negotiations in the sense contemplated by the rule of exclusion we are applying." 419 So.2d at 1062. Explaining, the court pointed out that the statement was not made during an actual polygraph examination, nor was it made in response to any preliminary questions. Instead, appellant made the statement spontaneously without any prompting or inducement. Said the court: "Appellant had no reasonable subjective belief that his statement was a part of the plea negotiations." Id. at 1062.
By contrast, the letter admitted against appellant here was nothing more nor less than an offer not to go to trial (in other words, plead guilty), in return for concessions by the state regarding the sentence to be imposed. Other than the unfavorable inferences to be drawn from any defendant's indication that he would be willing to plead guilty to a charge, there was no admission of any fact or any other statement in the nature of an admission or confession which would tend to establish appellant's guilt of the crime charged. As pointed out by the court in United States v. Robertson, supra, in connection with the two-tiered analysis, the initial inquiry must be into the subjective state of mind of the accused, and this inquiry must be made with care, so as "to distinguish between those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement." Id. 582 F.2d at 1367. Elaborating, the court stated:
The trial court must appreciate the tenor of the conversation. (Citation omitted). In those situations in which the accused's subjective intent is clear and the objective circumstances show that a plea bargain expectation was reasonable, the inquiry may end. For example, if the accused unilaterally offers to "plead guilty," United States v. Herman, 544 F.2d 791 at 793, [5th Cir.1977] or to "take the blame," United States v. Ross, 493 F.2d at [771] 774, [5th Cir. 1974] in exchange for a government concession, then the policy underlying Fed. R.Crim.P. 11(e)(6), and Fed.R.Evid. 410 is served only if the discussions are held inadmissible. (Emphasis added).
Significantly, the Robertson court was ruling upon the admissibility of incriminating statements made by the defendant to agents of the Drug Enforcement Administration, in the parking lot of the DEA office. In finding the conversations admissible, and rejecting Robertson's contention on appeal that the statements were made in connection with plea negotiations, the court emphasized that Robertson at no time contemplated or offered to plead guilty in exchange for the government concession sought from the officers (release of the women arrested along with Robertson and his companion). Here, by contrast, Russell's only statement was his offer not to go to trial in return for sentencing concessions. It was plainly inadmissible under the Robertson analysis.
Because the Florida Statute, section 90.410, was patterned after rule 410 of the Federal Rules of Evidence effective July 1, 1975, the federal cases construing language *610 similar to that found in the Florida rule are persuasive.[1] Even prior to the formal adoption of rule 410, and the comparable Federal Rule of Criminal Procedure, the federal courts have consistently held that offers to plead guilty are considered a part of plea negotiations, and are ordinarily inadmissible. In one of these seminal cases, United States v. Ross, 493 F.2d 771 (5th Cir.1974), the court held that a discussion between the defendant and a government narcotic agent in which the defendant inquired whether, if he took the blame, there was a chance his wife would be let go, "must be classified as an effort to bargain a plea." Id. at 775. Accordingly, the testimony concerning the discussion between the agent and the defendant should not have been admitted. To the same effect is United States v. Brooks, 536 F.2d 1137 (6th Cir.1976). Although decided under the law in effect prior to adoption of Federal Rule of Criminal Procedure 11(e)(6), the court held inadmissible evidence that the defendant had telephoned a postal inspector in charge of his case in which he offered to plead guilty (preceding this with a protestation of innocence) if he were given a maximum of two years imprisonment. The court noted that while the rule of exclusion of offers to plead guilty was not in force at the time of the trial in that case, nevertheless, "the rule merely represents culmination of a long existent trend which did antedate appellant's trial." Id. at 1139. Agreeing with the opinion of the court in United States v. Ross, supra, that it is "inherently unfair" for the government to engage in plea bargaining activity, and then to use it as a weapon against the defendant, the Brooks court added that "even an attempt to open plea bargaining (which is what we have in this case) should be covered under the same rule of inadmissibility." Id. 536 F.2d at 1139.
Again addressing the issue in United States v. Herman, 544 F.2d 791 (5th Cir.1977), the court held inadmissible statements made by the defendant to postal inspectors that he would plead guilty to robbery charges and produce the gun with which a codefendant allegedly shot a victim, if the authorities would agree to drop the murder charges. The ruling of the district court excluding the statements under Federal Rule of Criminal Procedure 11(e)(6), and Federal Rule of Evidence 410, was affirmed. Pointing out that rule 11(e)(6) makes inadmissible any statement made "in connection with any offer to plead guilty or nolo contendere to the crime charged or to any other crime," and that Federal Rule of Evidence 410 contains exactly the same provision, the court noted that during the course of the defendant's discussion with the postal inspectors, he *611 offered to plead guilty to robbery. Said the court: "The question before us is whether Herman's other statements were made `in connection with' the plea offer." Id. at 796. Examining the background of rule 11(e)(6) in the light of prior decisions accepting and encouraging the practice of plea bargaining, the court stated:
Against this backdrop the inappropriateness of giving the rule an inhospitable reading becomes clear. Excluded statements must be made "in connection with" plea offers, but if we are overly exacting in deciding which statements come within the standard, we will deter the unrestrained candor that often produces effective plea negotiations. Defendants must be free to participate in open and uninhibited plea discussions, and their decisions to do so must not later be subjected to microscopic judicial examination to determine whether the statements were closely enough related to the plea offers. Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea.

Clearly, there can be little doubt that the federal courts deciding the cases above-cited would have given short shrift to the argument that Russell's offer to plead guilty in return for a sentencing concession should have been admissible because not made in connection with plea negotiations.
Although it has been said that the state courts are divided on the issue,[2] the weight of authority among the earlier cases appears to have followed the rule that an offer to plead guilty is not admissible. In Commonwealth v. Cohen, 133 Pa.Super 437, 2 A.2d 560 (Sup.Ct.Pa. 1938), the court addressed the contention of the defendant that it was error to allow the state to prove that following his preliminary hearing before the alderman, at which he denied his guilt, the defendant had made an offer to the prosecuting police officer to change his plea to guilty, provided the officer would arrange with the prosecuting attorney that appellant would be given a short sentence. Reversing on other grounds, the court commented that the apparent weight of authority was against the admissibility of such evidence, and concluded that the evidence should not have been admitted. In People v. Wilson, 60 Cal.2d 139, 32 Cal. Rptr. 44, 383 P.2d 452 (1963), the court held that in a prosecution for murder in the first degree, evidence that the defendant had offered to plead guilty, first to manslaughter, and later to second degree murder, which offers were rejected by the prosecution, was inadmissible in evidence against him at trial. In so ruling, the court found that the rule in California that an offer to plead guilty is admissible in evidence had been changed by statute. Similarly, in Bennett v. Commonwealth, 234 Ky. 333, 28 S.W.2d 24 (1930), the court ruled that the offer of a defendant in a prosecution for murder to plead guilty in return for a life sentence was not admissible at his trial for murder. And in our neighboring state of Alabama, the court of appeals held in Roach v. State, 39 Ala.App. 271, 97 So.2d 837 (1957) that reversible error was committed by the trial judge in remarking in the presence of the jury that the defendant had stated that he wanted to plead guilty if the judge would not send him to prison. See other cases collected in Annotation, 59 ALR3d 441, Admissibility of Communications Made In Connection With Defense Plea Bargaining (1974).
The state has cited no Florida case in which a defendant's unaccepted offer to plead guilty has been held admissible against him at trial. Furthermore, the decisions relied upon by the state in urging admissibility are readily distinguishable. In Bottoson v. State, 443 So.2d 962 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984), the defendant gave written statements to two ministers confessing murder and requesting leniency. They delivered these statements to the state attorney's office, and they were admitted against him at trial. In rejecting the contention that these statements were made in connection with a plea or an offer to plead under section 90.410, the supreme *612 court determined, again applying the two-tiered analysis of United States v. Robertson, supra, that appellant had no reasonable expectation that he was involved in plea negotiations, since the ministers were not agents for the state, nor did he have any understanding with them as to the role they would play in helping him to obtain leniency. In Downs v. State, 439 So.2d 963 (Fla. 1st DCA 1983), pet. for rev. denied, 447 So.2d 886 (Fla. 1984), this court rejected the contention that incriminating statements made by Downs to a witness and the witness's mother were inadmissible under rule 3.170(f), Florida Rules of Criminal Procedure, and section 90.410, Florida Statutes (1981), since no law enforcement officers were present when the statements were made, and there was no withdrawn guilty plea or offer to plead guilty involved. In Traylor v. State, 498 So.2d 1297 (Fla. 1st DCA 1986), this court held that there was no error in the admission of two letters written by Traylor to Alabama and Florida judges confessing to both of the murders and requesting to be put to death. In rejecting the contention that the letters should have been held inadmissible as offers to plead guilty, this court correctly pointed out that the letters were only "unsolicited, unilateral statements" which do not fall under the protection of the statute, section 90.410. In Anderson v. State, 420 So.2d 574 (Fla. 1982), a case decided under former rule 3.171(d), Florida Rules of Criminal Procedure, prior to the enactment of the Evidence Code section 90.410, and prior to enactment of the present Rule of Criminal Procedure, rule 3.172(h), the court held inadmissible statements made by the defendant in connection with plea discussions in which Anderson discussed the possibility of pleading guilty to a homicide if the state agreed not to seek the death penalty. The court said that under former rule 3.171(d), in effect when Anderson entered his plea, evidence of statements made during plea negotiations was inadmissible.
From our review of the foregoing cases it is apparent that none dealt with the admissibility of an offer to plead guilty in return for concessions. Accordingly, we find that reversible error[3] occurred in this case, and that a new trial is required because of the improper admission of the defendant's letter to the prosecuting attorney.
We reject without further discussion, appellant's contention that the trial court erred in granting the state's motion in limine prohibiting defense counsel from presenting any argument regarding the state's failure to call Donald Lange as a witness, because appellant wholly failed to demonstrate below that production of the witness at trial was peculiarly within the state's power.
For the foregoing reasons, the judgment of conviction and sentence on appeal is reversed, and this cause is remanded for a new trial.
REVERSED.
BOOTH and ALLEN, JJ., concur.
NOTES
[1] Although rule 410, Federal Rules of Evidence, became effective July 1, 1975, the rule contained a provision which delayed its effectiveness until August 1, 1975, and further provided that the rule would be superseded by any amendment to the Federal Rules of Criminal Procedure which was inconsistent with the rule, which took effect after the date of the enactment establishing the Federal Rules of Evidence. As noted by the court in United States v. Martinez, 536 F.2d 1107 (5th Cir.1976), cert. denied, 429 U.S. 985, 97 S.Ct. 505, 50 L.Ed.2d 597 (1976), rule 410 as originally proposed never became effective, in that it was superseded by rule 11(e)(6), Federal Rules of Criminal Procedure, effective August 1, 1975. Rule 410, as originally enacted, provided as follows:

Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or of a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.
For an extensive discussion of rule 410, said by the authors to have "easily the most convoluted legislative history of any of the Evidence Rules," see Wright and Graham, Federal Practice and Procedure, § 5341. For purposes of our discussion, it is important to note that subsequent amendments to the federal rule and the statute eliminated the specific provision making an "offer to plead guilty" inadmissible, while the Florida Evidence Code has retained this language. See, 18 U.S.C.A., Federal Rules of Criminal Procedure, rule 11(e)(6), and 28 U.S.C.A., Federal Rules of Evidence, Rule 410.
[2] See United States v. Brooks, 536 F.2d 1137, 1138 (6th Cir.1976), fn. 1, and cases therein cited.
[3] The court held in Clark v. State, 452 So.2d 1002 (Fla. 2d DCA 1984), that the improper admission of evidence of statements in violation of section 90.410, and rule 3.172(h), could not be deemed harmless under the facts of that case. Said the court:

Admittedly, there was ample evidence from which the jury could have found the defendant guilty as charged. However, the over zealousness of the prosecution in introducing defendant's statements in violation of section 9.410 resulted in the deprivation of his right to a fair trial... .