BENTON, C.J.
Joseph Corrao appeals his convictions for leaving the scene of a crash involving personal injury and for two counts of driving under the influence involving damage to person or property. He contends that the trial court abused its discretion when it denied the motion for mistrial he made on grounds the prosecutor asked him, in the jury’s presence, whether he had offered to plead guilty in exchange for reduced charges. We agree and reverse.
Certain basic facts were not in dispute at trial: On the night of January 4, 2009, a white van, registered to Mr. Corrao, swerved into oncoming traffic and hit a small white car head on. As a result, the driver of the white car ended up with broken teeth and a skull fracture, and his passenger suffered collapsed lungs, a fractured sternum, and seven broken ribs. Pictures of the crash scene showed the passenger door of the van open. Mr. Cor-rao was found lying on the ground in the woods about 100 feet away, wearing blue shorts and a shirt, unresponsive and smelling of alcohol. Tests of samples taken from Mr. Corrao at the scene revealed blood alcohol levels of .366 and .364 grams per 100 milliliters.
Mr. Corrao’s defense at trial was that he was not driving the van at the time of the accident. There was ample evidence the other way, and there is no contention on appeal that the evidence is insufficient to support the convictions.[1] But the evidence at trial was in conflict as to the number of the white van’s occupants — whether one or two — and as to who was driving the van.
Mr. Corrao testified that, on the day of the accident, after drinking beer and watching football at his mother’s house, he went to Michael Case’s house at about four-thirty to work on a trampoline; that *942 Billy Mitchell drove him back to his mother’s house after an hour and a half, where they drank more beer and rum; that, about an hour later, his friend Will Biell-ings drove him to Troy Baxter’s house, with Billy Mitchell following behind in his own truck; and that they left Troy Baxter’s house at about eight-fifteen or eight-thirty to go to a convenience store.
On the trip to the convenience store, Mr. Corrao testified, Mr. Biellings was driving his van and he sat in the passenger’s seat, while Billy Mitchell again followed in his own truck. He testified he did not remember leaving the convenience store, and that the next thing he remembered was Mr. Biellings screaming at him, unlocking the passenger door, throwing him onto the ground, and running off. Later Donald Neilson helped him move away from the road and into the trees for safety reasons, he testified.
Corroborating this version of events in important particulars, Billy Mitchell testified that in the early afternoon on January 4, he was at Mr. Case’s house[2] with Mr. Corrao and a person named Will, until they left (in two vehicles) for Mr. Baxter’s house. When they later left Mr. Baxter’s house, Will drove Mr. Corrao’s van with Mr. Corrao in the passenger seat to Mr. Corrao’s mother’s house, and then to a convenience store. There, he testified, Mr. Corrao did not go into the convenience store, and, when he came out, he saw Mr. Corrao slumped over in the passenger seat of the van.
Troy Baxter testified that Mr. Corrao came to his house the day of the accident with Billy Mitchell and a person he did not know. They stayed for about thirty minutes, and it was dark when they left. He testified that he saw Mr. Corrao in the passenger seat of the van as they left.
Donald Neilson testified that he was not a friend of Mr. Corrao but knew him and his business. He testified that when he came upon the accident, he saw the passenger door open and saw Mr. Corrao get out of the van, and then he saw another person get out of the van. He testified that he told Mr. Corrao, who was wearing a light-colored button-up shirt and brown or black pants, to sit down in the grass out of the road.
In the state’s rebuttal case, Trooper Birchard testified that Mr. Corrao telephoned after the accident and that, when he returned the calls, Mr. Corrao said “that he wasn’t driving, that — he had an excuse for everything. Just it wasn’t him, it was somebody else driving, but he couldn’t tell me who it was.”
Against a background of conflicting evidence, we review the trial court’s ruling on the defense motions for mistrial for abuse of discretion. See Dessaure v. State, 891 So.2d 455, 464-65 (Fla.2004) (“An order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial.” (citing Cole v. State, 701 So.2d 845, 853 (Fla.1997))).
When Mr. Corrao testified that he told the investigating officers that Mr. Biellings was driving his van, the prosecutor asked: “Do you recall calling Trooper Birchard and telling him, look, I’ll plead to the DUI as long [as] it’s a misdemeanor?” Defense counsel objected, and approached the bench where the following exchange occurred:
*943 MR. PAYNE: Your Honor, I’m going to move for a mistrial. This prosecutor has brought into play in front of the jury an offer to plea[d] by the defendant. That is clearly grounds for a mistrial.
MR. DURRETT: Judge, he was not formally charged at that time. He just kept calling and calling FHP talking to them and trying to figure out what—
THE COURT: He called them.
MR. DURRETT: Correct.
THE COURT: And he wasn’t in custody.
MR. DURRETT: Correct.
THE COURT: Talking to them about how he would plea[d] to something.
MR. DURRETT: Correct.
MR. PAYNE: He knew he was under investigation.
THE COURT: He wasn’t in custody.
MR. PAYNE: This is not a Miranda issue, this is an issue of an offer to plea[d].
THE COURT: Straight from the defendant, nobody talking him into it, him calling and asking. Overruled.
Once more in front of the jury, the prosecutor asked again “you called Trooper Birchard, didn’t you, and tell him — and told him that you would plea to this so long as it was a misdemeanor DUI, didn’t you?” and Mr. Corrao responded, “No, I did not.” The defense renewed its motion for mistrial before closing arguments, and the trial court denied the renewed motion.
Under section 90.410, Florida Statutes (2010), “[e]vidence of ... an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.” See also Fla. R.Crim. P. 3.172(i). These rules “were ‘adopted to promote plea bargaining by allowing a defendant to negotiate without waiving fifth amendment protection,’ ” and “were intended to promote ‘free and open discussion’ between the defense and the State ‘during attempts to reach a compromise.’ ” Calabro v. State, 995 So.2d 307, 313 (Fla.2008) (quoting Groover v. State, 458 So.2d 226, 228 (Fla.1984)).
If the prosecutor’s question to Mr. Cor-rao concerning his offering to “plead to the DUI as long [as] it’s a misdemeanor” is viewed as communicating evidence of an offer to the jury, it was clearly inadmissible under section 90.410 as an offer to plead guilty. See Russell v. State, 614 So.2d 605, 609 (Fla. 1st DCA 1993) (contrasting the statements allegedly made in connection with plea negotiations in United States v. Robertson, 582 F.2d 1356 (5th Cir.1978),[3] with “Russell’s only statement [which] was his offer not to go to trial in return for sentencing concessions .... [that] was plainly inadmissible under the Robertson analysis.”).
Admitting evidence of an offer to plead guilty over objection is grounds for reversal. We reversed in Russell, because the *944 trial court admitted an unsolicited letter from the defendant the prosecutor received the day before trial that read: “If I could be sentenced under the regular offense and you agree to give me three years and all my county time I will take it and won’t go to trial. If you agree to do this. I look forward to hearing from you soon.” 614 So.2d at 606. The Second District ruled similarly in McCray v. State, 760 So.2d 988, 988-89 (Fla. 2d DCA 2000), where the trial court let in evidence a letter McCray sent the state attorney shortly before trial in which he offered to plead guilty to both counts against him in exchange for time to see his dying mother before going to prison.
Viewed as merely insinuating that the appellant had offered to plead guilty, the prosecutor’s question posed the same threat to a fair trial. “It is axiomatic that counsel cannot ask questions of a witness that have no basis in fact and are merely intended to insinuate the existence of facts to a jury.” Del Monte Banana Co. v. Chacon, 466 So.2d 1167, 1172 (Fla. 3d DCA 1985). See also Duncan v. State, 776 So.2d 287, 288-89 (Fla. 2d DCA 2000) (“ ‘[T]he predicate questions to impeachment must be asked in good faith, that is, with the intent and ability to later prove (if it is not admitted) that the witness gave some statement inconsistent with his or her present testimony. The reason that such proof must be forthcoming is because the predicate question — e.g., “Didn’t you tell me ... ?” or “Didn’t you say to so-and-so” — is itself testimonial, that is, the question suggests that there is a witness who can testify that such a statement was made. When this suggested witness is not actually called to give the impeaching testimony under oath, all that remains before the jury is the suggestion — from the question — that the statement was made. When that occurs, the conclusion that must be drawn is that the question was not asked in good faith, and that the attorney’s purpose was to bring before the jury inadmissible and unsworn evidence in the form of his questions to a witness.’ ” (quoting Tobey v. State, 486 So.2d 54, 55 (Fla. 2d DCA 1986))).
A prosecutor’s question not supported by the evidence can be highly prejudicial. See Hunter v. State, 973 So.2d 1174, 1176 (Fla. 1st DCA 2007) (holding trial court should have granted Hunter’s motion for mistrial where prosecutor asked a question that “implied that he was directly involved in a similar crime”); Holmes v. State, 757 So.2d 620, 621-22 (Fla. 3d DCA 2000) (deeming prosecutor’s “tell[ing an inadmissible fact to] the jury through a leading question” improper and highly prejudicial); Gonzalez v. State, 572 So.2d 999, 1000 (Fla. 3d DCA 1990) (reversing because the prosecutor asked the defendant “whether it was a fact that he was hired to ‘get rid of the alleged [abduction] victim”). But cf. Straight v. State, 397 So.2d 903, 908-09 (Fla.1981) (“inconceivable” that prosecutor’s improper question to defendant about unrelated criminal activity affected the verdict, in light of “overwhelming evidence against appellant” and fact that improper comment did not undermine any particular theory of the defense); Carpenter v. State, 664 So.2d 1167, 1169 (Fla. 4th DCA 1995) (“We cannot agree with defendant that the court should have granted defendant’s motion for mistrial ... because the fact insinuated by the question was not so prejudicial as to require a mistrial.”).
In the present case, the prosecutor’s question had no support in any evidence offered at trial. Mr. Corrao testified that he had not offered to plead guilty to a lesser included offense. Trooper Birch-ard’s rebuttal testimony actually supported Mr. Corrao’s version of events: He testified that Mr. Corrao told him that he was not driving at the time of the accident. *945 The “facts” insinuated by the question — a purported offer to admit he was guilty of a lesser included driving offense — went directly to the heart of Mr. Corrao’s defense — that he was not even driving at the time of the crash. We cannot say that the error was harmless beyond a reasonable doubt, or that denial of the motions for mistrial was not an abuse of discretion.
Reversed and remanded.
VAN NORTWICK and SWANSON, JJ., concur.

. For the state, Phillip Black testified that he had to swerve to keep the white van from hitting him, then saw the accident in his rear-view mirror. He only saw one person inside the van, the driver, whom he described as a white male, "stocky, short, military cut.” He continued driving down the road to get help, and by the time he returned to the scene, the driver of the van was gone. Tammy Lans-ford, Mr. Corrao’s ex-wife, testified that she had seen Mr. Corrao driving his van around four-thirty or five o'clock on the day of the accident. Christopher Glenn, the driver of the white car, testified that after the accident, he saw only one person inside the van, whom he saw climb out of the driver’s side window and step onto the hood of his car. He described the person as short and stocky, with short hair. The person had a phone in his hand, but he did not say anything.
Cheryl Stokes testified that she came across the accident shortly after it occurred, and pulled over to help. She testified that she saw only one person in the van, a man sitting behind the wheel, who locked eyes with her but did not respond to her questioning. She described him as "on the heavy side,” with hair to his ears, and identified Mr. Corrao as the person she saw behind the wheel. Ms. Stokes testified that she saw the man climb out of the passenger side window, climb across the hood of the white car, and stand in front of the van. She did not notice if the passenger door to the van was open when she arrived on the scene. She was later called back to the scene after Mr. Corrao was found in the woods, and she identified him as the man she saw behind the wheel of the van. Trooper Mark Birchard testified that he was called out to the scene to investigate the crash. While he was on the scene, a friend of Mr. Corrao, Michael Case, came to the scene and started yelling for Mr. Corrao. Trooper Birchard testified that Mr. Case came to the scene of the accident and told him that he was worried about Mr. Corrao because he had been drinking and was driving by himself. Trooper Jim Taylor testified that when Mr. Case came to the scene of the accident, he told him that Mr. Corrao had just left his house driving the van. He testified that Ms. Stokes told him that she saw the driver of the van get out of the passenger door.

. Michael Case testified that, on the afternoon of January 4, Mr. Corrao was at his house with Billy Mitchell helping put together a trampoline and that, when the two men left his house in Mr. Corrao's van, he did not see who was driving. Later, when he came upon the scene of the accident, he called appellant's cell phone, Mr. Case testified, and heard it ringing in the van.

. In United States v. Robertson, 582 F.2d 1356 (5th Cir.1978), the Fifth Circuit rejected Robertson’s argument that certain admissions he and a co-defendant made to Drug Enforcement Administration agents after being arrested — they admitted their involvement in hopes of securing leniency for the women with them — should have been excluded as statements connected with plea negotiations.
The court held that, in determining whether a discussion should be deemed a plea negotiation, “[t]he trial court must apply a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused’s expectation was reasonable given the totality of the objective circumstances.” Id. at 1366.