UNITED STATES of America

v.

Kar Sing LAU.

Crim. No. 88–00076–P.

United States District Court,
D. Maine.

May 3, 1989.

Frederick C. Emery, Jr., Asst. U.S. Atty., Portland, Me., for government.

Judy Potter, and Michael Mullane, University of Maine Law School, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GENE CARTER, District Judge.

Defendant in this case is charged with conspiracy to import, importation, and aiding and abetting the importation into the United States of over one kilogram of a substance containing heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(A), 963 and 18 U.S.C. § 2. Defendant seeks to suppress certain documents and two marijuana cigarettes, seized during execution of a search warrant for his apartment, and statements made by Defendant's attorney to a Drug Enforcement Agency (DEA) agent and to an Assistant United States Attorney on the evening of November 17, 1988.

### Facts

A United States Customs agent at Kennedy Airport in New York City discovered about 2,700 grams of heroin in a package sent from Hong Kong to Simon La in South Portland, Maine. The DEA in Portland arranged for a controlled delivery of the package, from which a substantial portion

of the contents had been removed and in which had been installed an electronic sensor. Defendant accepted delivery of the package at 9:55 a.m. on November 17, 1988. At 9:58 a.m., Defendant left his apartment, without the package, and went to work. Defendant's apartment was kept under surveillance that day and evening. The parcel did not leave the apartment during that time, and the sensor did not indicate that it had been opened.

At his place of employment, Defendant learned from a friend's telephone call that suspicious individuals, purporting to be doing Defendant's laundry, were around his apartment. He spoke to an attorney who happened to come into the restaurant where he worked, and this attorney referred him to Attorney David Pomeroy. Defendant went to Pomeroy's office, they conferred, and Pomeroy called DEA Agent Michael Cunniff. When Cunniff returned Pomeroy's call, Pomeroy tried to obtain information for Defendant about what was going on and about what he should do with the package. Pomeroy told Cunniff that Defendant owed money to a person who was currently in Hong Kong and that he was afraid of that person. According to Pomeroy, the person had asked Defendant to accept a package by mail for him and hold it until the friend arrived in Portland. Defendant told Pomeroy he had received another phone call requesting the same thing. Defendant also said that after the delivery of the package, he had received a telephone call from the person in Hong Kong asking if it had arrived. Pomeroy asked Cunniff whether the agents would refrain from arresting Defendant that night if Pomeroy would arrange for Defendant to go to his apartment and let the authorities in, stay out of the apartment all night, and remain available for interrogation the next day. Cunniff said he would check, and Assistant United States Attorney William Browder called Pomeroy back within five minutes. Pomeroy repeated the information and the proposal to him. In the course of several phone calls, which took place, at Browder's end, on a speaker phone in his office and which were listened to by Cunniff and other agents and Assist-

ant United States Attorneys, Browder asked whether Defendant would name the person who had sent the package, whether Defendant would consent to a search of his apartment, and whether Defendant would take a polygraph test. At a certain point, Browder told Pomeroy that his office was surrounded by agents. According to the testimony of both Pomeroy and Browder, there was no specific discussion of whether Defendant would be prosecuted or whether he would plead guilty. In a later call, it was arranged that Defendant would be arrested at Pomeroy's office, and he was arrested.

A warrant was issued to search Defendant's apartment. Numerous documents were found and seized during the search. In the course of searching for the documents, the officers found two marijuana cigarettes which were also seized.

### Scope of the Warrant

■ Defendant first argues that the officers did not have probable cause to search for anything more than the package itself and, therefore, that the warrant authorizing the search for documents was invalid. Defendant asserts that sufficient probable cause to search the apartment for evidence other than the package would have to have included evidence showing that he knew or should have known that the substance mailed to him was contraband and that he was a willing participant in the illegal scheme. The Court finds that the affidavits supporting the search warrant established probable cause.

Given the nature and value of the package mailed to Defendant from outside the United States, it was reasonable for both the DEA and the Magistrate to infer that the consignee would know that he was party to an illegal transaction. *People v. Superior Court*, 27 Cal.App.3d 404, 103 Cal.Rptr. 874 (1972). Despite Defendant's protestations to the contrary, credence is lent to the inference of knowledge by the fact that Defendant admits that the sender was a person to whom he owed a debt and of whom he was afraid. The affidavit of DEA Agent Dale Lear in support of the

application for a search warrant stated that he was aware, from his training, experience, and participation in drug investigations, that drug distributors maintain in their homes documents and letters relating to the transportation, ordering, supplying, sale, and distribution of drugs. The affidavit also recited that, in his experience and that of other agents, "in some instances, the recipient of a parcel containing an illegal mail shipment of controlled substances will also be in possession of correspondence pertaining to the illegal importation or other mail reflecting the same origin as the parcel." Lear's statement of his own and another officer's experience in this area is not merely conclusory. Common sense and common experience dictate that such communication would indeed occur. *Id.; see also People v. Sloss*, 34 Cal.App.3d 74, 109 Cal.Rptr. 583 (1973) ("The mailing of the package of marijuana from Kragga Kamma, South Africa, justified a reasonable inference that other correspondence relating to the package ... would be on the premises.") The fact that defendant reported telephonic communication concerning the package does not preclude the inference that there could very likely be written communications as well. The Court finds, therefore, that the affidavits in support of the search warrant provided adequate information for the Magistrate's finding of probable cause to search for documents, and that the warrant is valid.

### Marijuana

Since the Court has not found the warrant overly broad, there remains no issue concerning the appropriateness of the seizure of the marijuana in Defendant's apartment.[1] The Court's decision on Defendant's Motion *in Limine* to exclude the marijuana as irrelevant or overly prejudicial will be deferred until it is offered at trial, when there will be an evidentiary basis for assessing the claims made.

### Attorney's Statements

■ Defendant also argues that the statements made to Agent Cunniff and Assistant United States Attorney Browder by his attorney David Pomeroy should be suppressed because Defendant had not been administered *Miranda* warnings. Attorney Pomeroy's statements cannot, by the farthest stretch of the imagination, be construed as statements made by Defendant while under custodial interrogation and thus requiring preinterrogation warnings. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Finally, Defendant contends that Pomeroy's statements to Cunniff and Browder were part of the plea bargaining process and, therefore, inadmissible under Rule 11(e)(6) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. Rule 410 holds inadmissible "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Rule 11(e)(6) holds the same evidence inadmissible in virtually identical language.

The Court cannot find on this record that Pomeroy and Assistant United States Attorney Browder, or Pomeroy and Agent Cunniff, were engaged in plea negotiations. There was no offer by Defendant to plead guilty upon some condition. *See United States v. Levy*, 578 F.2d 896, 901 (2d Cir. 1978); *United States v. Ceballos*, 706 F.2d 1198, 1203 (11th Cir.1983); *United States v. Porter*, 821 F.2d 968, 976–77 (4th Cir. 1987). In fact, according to Browder's testimony, Pomeroy never mentioned Rule 11 or a plea bargain, and the words "plea," "charge" and "indictment" were not used. Pomeroy did not express the hope that a concession to reduce Defendant's punish-

---

1. At oral argument Defendant's attorney stated: If your Honor agrees with me that the search warrant was overly broad and that the officers had a right only to search for the package, there is an issue as to whether or not a small amount of marijuana that was seized was in plain view or not, that the officers had a right to be where they were and saw it in plain view.
The Court does not agree with Defendant on the scope of the warrant.

ment would result. *See Levy*, 578 F.2d at 901.

Pomeroy stated at the hearing that he considered the interchange to be negotiations concerning disposition of the matter, and that his purpose was for Defendant to have contact with the Government and not be charged. Even if this were in Pomeroy's mind, it was not reasonable for him to believe he was engaged in plea negotiations. *See United States v. Robertson*, 582 F.2d 1356 (5th Cir.1978). He made no such proposal; he merely talked about postponing Defendant's arrest until the next day. The Government also made no proposals relating to a charge. While Browder asked if Defendant would take a polygraph test and if he would name the sender of the package, these questions are properly construed as investigation. They were not tied explicitly or implicitly to any proposals concerning charges to be brought against Defendant. Defendant himself offered nothing other than to open his apartment and to be available for questioning. This is not a situation in which there was any bargaining or negotiating concerning a plea or a charge. The Court finds, therefore, that Pomeroy's statements to Assistant United States Attorney Browder are not covered by Fed.R.Crim.P. 11(e)(6) and Fed. R.Evid. 410.

The claim made that Pomeroy's conversations with Cunniff should be excluded *in limine* is even more attenuated since both rules apply to statements made to prosecuting attorneys. The "proposal" to Cunniff was virtually identical to that repeated to Browder and did not rise to the level of plea discussions or negotiations. Moreover, Cunniff was not authorized to engage in plea negotiations for the United States Attorney's office, and the Court is persuaded that Pomeroy knew that. *See United States v. Serna*, 799 F.2d 842, 849 (2d Cir.1986). The discussion with Cunniff took place before there had been any communication with the United States Attorney's office. Pomeroy knew that Cunniff could not make binding plea agreements and that it was the United States Attorney's province, rather than the DEA's, to decide whether or not to charge. Agent Cunniff was not the logical person to call in order to enter into plea negotiations. Also, Pomeroy had initiated the contact with Cunniff so there was no basis for assuming that whatever Cunniff did or said was under the United States Attorney's authority. *Id.* Presumably, the United States Attorney did not know that anything was going on. Cunniff did not say anything that would have led Pomeroy to believe he had authority to negotiate.[2] In fact, after Pomeroy asked if Cunniff would wait to arrest Defendant, Cunniff said he would have to check. The Court finds, therefore, that Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 do not apply in this case and statements made by Pomeroy to Agent Cunniff and Assistant United States of Attorney Browder will not be excluded *in limine*.

Accordingly, it is hereby *ORDERED* that Defendant's Motion to Suppress or Exclude Evidence is hereby *DENIED*. Any ruling on the relevance of the marijuana seized in Defendant's apartment is *DEFERRED* until the Government seeks to introduce it at trial.

---

**2.** Pomeroy stated that he has begun negotiations with Cunniff whom he describes as often involved in decision-making. There was no indication that Cunniff had any negotiating authority in this case, however.