995 So.2d 307 (2008)
Rodney CALABRO, Petitioner,
v.
STATE of Florida, Respondent.
No. SC07-1105.
Supreme Court of Florida.
September 18, 2008.
Rehearing Denied November 17, 2008.
*309 Charles G. White, Miami, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Richard L. Polin, Assistant Attorney General, Bureau Chief, and Rolando Soler, Assistant Attorney General, Miami, for Respondent.
ANSTEAD, J.
This case is before the Court based upon express and direct conflict. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. Petitioner, Rodney Calabro, contends that the holding of the Third District Court of Appeal in State v. Calabro, 957 So.2d 1210 (Fla. 3d DCA 2007), that his statements made during arraignment indicating his desire to engage in plea negotiations were admissible against him at his criminal trial, is in error and conflicts with the Florida Evidence Code and other district court decisions. We agree and quash Calabro.

PROCEEDINGS TO DATE
In Calabro the Third District outlined the circumstances culminating in Calabro's appeal:
The State filed an information charging Calabro with one count of second degree murder. On November 26, 2002, during the arraignment in open court, with Calabro and the prosecutor present, the trial judge reviewed Calabro's financial affidavit and subsequently, appointed Calabro a public defender to represent him. Immediately after the appointment of the public defender, the following discussion took place:
MR. WILLIAMS [the public defender]: Stand mute, demand discovery, trial by jury. Is it murder second degree?
MS. SEITCHIK [the prosecutor]: Is that in aright now, it is. I have discovery and I also amended discovery will [sic] all the reports that I have at this time.
THE COURT: Set for trial.
CLERK: March 10th.
MR. CALABRO: Is there any possible way I can get an earlier date? I just want to get this over with as soon as possible. I know what I'm saying. I'm very coherent, my mind is a proven perspective. I'll just like to avoid trial and get sentenced on this.
You should have talked to me three weeks ago, I haven't had no representation since I've been in jail, for three weeks. Where have you been? I will like to avoid the trial and have some kind of plea agreement set earlier than March or whatever that was.

THE COURT: Four weeks for report.
MS. SEITCHIK: No.
THE COURT: Just report regarding status.
MS. SEITCHIK: That's fine, Judge.

*310 MR. CALABRO: I know this is unusual but unfortunately, I'm guilty of this. And the police up there, what they say up there is; this is what you are getting. And you are getting the truth, maybe I'm catching some people off guard here.
But if an attorney came to see me within its past three weeks, maybe they'll have an idea of where my mind is at but right now I'm guilty. I'm not proud of it, but.

THE COURT: This is the first time I appoint[ ] this gentleman in particular to represent you.
MR. CALABRO: Supposedly there was somebody representing me.
THE COURT: The Public Defender was appointed, but the Public Defender in general, at your bond hearing. But this gentleman in particular I just appointed.
....
THE COURT: I'll see him on December 18th, Wednesday; does that give you sometime [sic] to speak to him?
MR. WILLIAMS: Sure.
THE COURT: And we will see what his mind set is at that time....
(Emphasis added). Calabro thereafter filed a motion to exclude the statements relating to his admissions of guilt, alleging that the statements were offers to plead guilty or made in connection with plea negotiations and thus, inadmissible under section 90.410 of the Florida Statutes and Florida Rule of Criminal Procedure 3.172(h). In responding to Calabro's motion to exclude the statements, the State conceded that the first statement uttered by Calabro, "I will like to avoid the trial and have some kind of plea agreement," is inadmissible under section 90.410, Florida Statutes, and rule 3.172(h) of the Florida Rules of Criminal Procedure. As to the second statement, "I know this is unusual but unfortunately I'm guilty of this.... right now I'm guilty," the State argued that it was a separate and distinct, unsolicited and unilateral utterance, which did not satisfy the two-prong test required by the Florida Supreme Court in characterizing a statement or discussion as an inadmissible plea negotiation. The trial court entered an order excluding both statements, concluding that the statements made by Calabro "were offers for a plea agreement and are inadmissible pursuant to § 90.410, Fla. Stat. (2005) and Fla. R.Crim. P. 3.172(h)."
On appeal, similarly to its argument below, the State only challenges the exclusion of Calabro's second statement and argues that the trial court erred in excluding the statement as an offer for a plea agreement.
Calabro, 957 So.2d at 1211-12.[1] The Third District reversed the trial court's order excluding the second statement. "Without reaching a conclusion as to the propriety of the State's concession of Calabro's first statement as an inadmissible offer for a plea agreement," the Third District held that "Calabro's second statement relating to his admission of guilt was an unsolicited, unilateral utterance not made in connection with any plea negotiation and is therefore, admissible." Id. at 1212. The Third *311 District cites Florida Rule of Criminal Procedure 3.172(h) in its opinion, but this rule is now rule 3.172(i).

ANALYSIS
When reviewing orders on motions to suppress, appellate courts "accept the trial court's factual findings if there is evidence to support them, while reviewing the court's legal conclusions de novo." Nelson v. State, 850 So.2d 514, 522 (Fla. 2003) (describing the standard of review for orders on motions to suppress alleging constitutional violations). In this instance we agree with the State that our review is essentially de novo since the trial court relied exclusively on a transcript from arraignment as the factual predicate for applying section 90.410, Florida Statutes (2005), and Florida Rule of Criminal Procedure 3.172(i) (formerly rule 3.172(h)).
Calabro argues that the Third District erred in concluding that his unsolicited statements admitting guilt during arraignment did not fall within the ambit of evidence excluded by section 90.410, Florida Statutes (2007), and Florida Rule of Criminal Procedure 3.172(i). He asserts that the Third District's ruling is contrary to an application of the plain language of section 90.410 and rule 3.172(i) as well as numerous decisions from this Court and the other district courts of appeal involving similar circumstances.
Initially, for example, Calabro asserts that the Third District's decision in Calabro conflicts with the decision of the First District Court of Appeal in Davis v. State, 842 So.2d 989 (Fla. 1st DCA 2003). The statements at issue in Davis took place during a pretrial "rocket docket" arraignment hearing in open court. Id. at 990. The First District held that the defendant's statement to the prosecutor "Oh, I already told you I was guilty of that, but the grand theft, no, no, no" was made in connection with the defendant's attempts at plea negotiations and was, therefore, inadmissible under the express provisions of section 90.410. Id. at 991-92. The First District cited this Court's opinion in Richardson v. State, 706 So.2d 1349 (Fla. 1998), and concluded by explaining that its holding was mandated by Richardson and the express terms of the statute and rule:
In so finding, we note the fairly broad scope of the applicable criminal rule and statute, section 90.410. See § 90.410, Fla. Stat. (2000) ("Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 831." (emphasis added)); Richardson, 706 So.2d at 1355-56 ("Rule 3.172(h) and section 90.410, Florida Statutes (1991), prohibit the admission of statements given during plea negotiations....").
842 So.2d at 991-92. Similarly, Calabro asserts his initial request for a plea agreement constituted "an offer to plead guilty" and his second statement conceding guilt was "made in connection with" that offer and his attempt to resolve his case by a plea agreement. However, notwithstanding the similarities between the circumstances in Davis and Calabro, we agree with the State that the cases can also be distinguished on the basis that Davis involved ongoing plea discussions while Calabro involves the initiation of plea discussions by the defendant.
Calabro also asserts the Third District's decision conflicts with the holdings in Debiasio v. State, 789 So.2d 1061 (Fla. 4th DCA 2001); McCray v. State, 760 So.2d 988 (Fla. 2d DCA 2000); and Russell v. *312 State, 614 So.2d 605 (Fla. 1st DCA 1993). He notes that, as in his case, all three of these cases involved initial and unsolicited communications by defendants to the State offering to plead, and, in the process, admitting guilt. In all these cases the district courts held that section 9.410 and rule 3.172(i) barred admission of the statements.
In Russell, the First District found that a defendant's unsolicited letter to the state attorney was an offer to plead and was, therefore, inadmissible pursuant to section 90.410 and rule 3.172(i). The letter at issue, which was received the day before trial, stated:
Dear Mr. Grimm,
If I could be sentenced under the regular offense and you agree to give me three years and all my county time I will take it and won't go to trial. If you agree to do this. I look forward to hearing from you soon.
Russell, 614 So.2d at 606. The State argued that the letter was an unsolicited and unilateral communication not protected by the statute. Id. The First District disagreed and, after an extensive discussion of this Court's case law and several federal decisions, applied that law and the plain language of section 90.410 and rule 3.172(i) in holding that the letter should not have been admitted in evidence as an admission of Russell's guilt and concluding that "[u]nder a literal reading of the statute, an `offer to plead guilty' is inadmissible." Id. at 608.
In McCray, the Second District followed Russell in holding that a similar unsolicited letter from the defendant to the state attorney was an offer to plead guilty and was therefore inadmissible under the plain language of section 90.410 and rule 3.172(i). McCray sent the state attorney the following letter shortly before trial:
Yes! I would like to make a change of plea, I'll plea guilty to both counts, only if you grant me a furlow [sic] to see my (mother) who is dieing [sic] of (bone cancer) before I am set [sic] to prison? I understand by this plea I am giving up all my right to a trial.... Please contact me as soon as possible.
McCray, 760 So.2d at 988-89. The Second District followed the rationale of the First District's holding in Russell:
In [Russell], the First District held that even an unsolicited and self-initiated communication inviting the state attorney to accept a plea offer could not be used against the offering defendant
....
We find the rationale of Russell applicable to our case. McCray's letter was no more than an offer to negotiate a plea in return for concessions.
McCray, 760 So.2d at 989. The Second District reversed the trial court's ruling that the letter was admissible. Id.
Subsequently, in Debiasio, the Fourth District Court of Appeal followed Russell and McCray in holding that the defendant's unsolicited letter to the state attorney was an inadmissible offer to plead. The relevant part of the letter stated:
As per my previous letter that I sent to your office, my clear intentions are outlined in that letter. Again, the reason for that letter was not to merely mask the seriousness of the offenses to which I am charged. It is an attempt to clear the air so to speak, of my ugly drug and alcohol addictions. My new found strenght [sic] orginates [sic] from God, and doing what is right, facing the truth and accepting responsibility for what I've done, was a giant step for me.
My intentions outlined in my previous letter to you are in order to preserve my well being, and that of my family. I wrote to you in confidence, with the *313 hopes of arriving at some sort of resolution, without neglecting the facts of the seriousness of these offenses.
What I want to arrive at, as far as agreement, is that I completely cooperate with the State of Florida and its investigation of the previously named individuals, in return for a sentence that is to be served concurrently with the sentence I'm already serving in Ohio, and to protect myself while in the custody of Florida law enforcement officers, and protecting the name and location of my family.
Debiasio, 789 So.2d at 1062 (emphasis removed). The Fourth District cited Russell and McCray and concluded:
We conclude that the letter in this case was an offer to plead guilty and, therefore, falls squarely within the ambit of evidence prohibited by section 90.410. See Russell v. State, 614 So.2d 605 (Fla. 1st DCA 1993) (unsolicited letter to the prosecutor offering to plead guilty in exchange for certain concessions held inadmissible under section 90.410). See also McCray v. State, 760 So.2d 988 (Fla. 2d DCA 2000). Therefore, the judgment is reversed and the cause remanded for further proceedings.
Id. at 1063.
We agree with Calabro that the holdings in Russell, McCray and Debiasio conflict with the Third District's holding in Calabro. As in Calabro, all three of these decisions involve unsolicited attempts initiated by the defendant personally to engage in plea negotiations to resolve the criminal charges filed by the State, and in all three cases the district courts held the defendant's statements should be excluded as offers to plead as contemplated by the provisions of section 90.410 and rule 3.172(i).

THE STATUTE AND RULE
Section 90.410, Florida Statutes, provides:
Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.
Id. Rule 3.172(i) similarly provides that "[e]xcept as otherwise provided in this rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer." The provisions of the statute and rule are essentially identical.
This Court has explained that section 90.410 and rule 3.172(i) were "adopted to promote plea bargaining by allowing a defendant to negotiate without waiving fifth amendment protection." Groover v. State, 458 So.2d 226, 228 (Fla. 1984). We further noted that these provisions were intended to promote "free and open discussion" between the defense and the State "during attempts to reach a compromise." Id. at 228 (quoting United States v. Davis, 617 F.2d 677, 683 (D.C.Cir.1979)).

ROBERTSON
In addition to applying the language of the statute and rule, this Court has also used the approach set out in United States v. Robertson, 582 F.2d 1356 (5th Cir. 1978), in resolving similar issues. See Richardson v. State, 706 So.2d 1349, 1355-56 (Fla. 1998). Robertson holds that courts should consider the totality of the circumstances in each individual case to determine whether the defendant's statements should *314 be admitted, and in doing so should focus on two factors, whether the defendant had a subjective expectation of engaging in plea negotiations and whether that expectation was reasonable under the circumstances. Robertson, 582 F.2d at 1366.
In this appeal the parties differ as to whether this Court should rely on the language of the statute and rule, the totality of circumstances and two-tiered analysis of Robertson, or both in resolving the issue. We hold that courts should first apply the plain meaning of the statute and rule, and, if that analysis does not resolve the issue, the analysis in Robertson should be applied. Moreover, we conclude that both the plain language of the statute and rule and the Robertson analysis support exclusion of the statements made here.
This Court has held from time immemorial that we must primarily determine the effect and purpose of statutes and rules of court by first examining the actual words used in the statute or rule and determine the plain meaning of those words. Cf. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (citing A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). Assuming that the plain meaning of the words used can be determined, we are bound to apply that plain meaning to resolve legal disputes that involve application of the statute or rule. Hence, courts are initially bound to apply the terms of section 90.410 and rule 3.172(i) according to the plain meaning of those terms.
However, sometimes factual circumstances are presented that evade analysis by a simple application of the terms of a statute or rule. Such was the case, for example, in Robertson, where the defendant asserted post-trial that he had actually intended for his prior admissions of guilt to federal law enforcement officers to be part of plea negotiations. 582 F.2d at 1363. He raised the issue of plea discussions for the very first time on appeal, and the Robertson court not only rejected his claim but also explained its method of analysis for doing so. Id. at 1364, 1367-71.
Judge Smith's scholarly opinion for the First District in Russell contains an extensive discussion of Robertson and the other federal decisions later relied upon this Court in adopting a framework for analysis of issues arising under section 90.410 and rule 3.172(i), where the plain terms of the statute or rule may not yield a ready answer. Russell, 614 So.2d at 608-11. As noted by Judge Smith, the federal court explained the rationale of its holding in a way that was particularly helpful to the First District's resolution of Russell:
As pointed out by the court in United States v. Robertson, supra, in connection with the two-tiered analysis, the initial inquiry must be into the subjective state of mind of the accused, and this inquiry must be made with care, so as "to distinguish between those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement." Id., 582 F.2d at 1367. Elaborating, the court stated:
The trial court must appreciate the tenor of the conversation. (Citation omitted). In those situations in which the accused's subjective intent is clear and the objective circumstances show that a plea bargain expectation was reasonable, the inquiry may end. For example, if the accused unilaterally offers to "plead guilty," United States v. Herman, 544 F.2d [791] at 793 [5th Cir.1977] or to "take the blame," United States v. Ross, 493 F.2d at [771] 774, [5th Cir. 1974] in exchange for a government concession, then the policy underlying Fed.R.Crim.P. 11(e)(6), and Fed.R.Evid. 410 is served only if *315 the discussions are held inadmissible. (Emphasis added).
Significantly, the Robertson court was ruling upon the admissibility of incriminating statements made by the defendant to agents of the Drug Enforcement Administration, in the parking lot of the DEA office. In finding the conversations admissible, and rejecting Robertson's contention on appeal that the statements were made in connection with plea negotiations, the court emphasized that Robertson at no time contemplated or offered to plead guilty in exchange for the government concession sought from the officers (release of the women arrested along with Robertson and his companion). Here, by contrast, Russell's only statement was his offer not to go to trial in return for sentencing concessions. It was plainly inadmissible under the Robertson analysis.
614 So.2d at 609. The Russell court concluded that it was faced with the very scenario of a unilateral offer by a defendant to plead that the Robertson court had suggested would be inadmissible. The Russell opinion also discusses the opinions in United States v. Ross, 493 F.2d 771 (5th Cir.1974); United States v. Herman, 544 F.2d 791 (5th Cir.1977), and United States v. Brooks, 536 F.2d 1137 (6th Cir.1976), for the same proposition cited with favor in Robertson, the necessity that courts carefully distinguish between "those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement." Russell, 614 So.2d at 609 (quoting Robertson, 582 F.2d at 1367).[2] As noted, the Robertson court *316 found on the particular facts before it that Robertson "was merely making an admission" to law enforcement agents, Robertson, 582 F.2d at 1367-68, as opposed to the attempt at plea negotiations involved in Russell.[3]
The Russell opinion concludes with a helpful discussion and quote from the Fifth Circuit's opinion in Herman:
Again addressing the issue in [Herman], the court held inadmissible statements made by the defendant to postal inspectors that he would plead guilty to robbery charges and produce the gun with which a codefendant allegedly shot a victim, if the authorities would agree to drop the murder charges. The ruling of the district court excluding the statements under Federal Rule of Criminal Procedure 11(e)(6), and Federal Rule of Evidence 410, was affirmed. Pointing out that rule 11(e)(6) makes inadmissible any statement made "in connection with any offer to plead guilty or nolo contendere to the crime charged or to any other crime," and that Federal Rule of Evidence 410 contains exactly the same provision, the court noted that during the course of the defendant's discussion with the postal inspectors, he offered to plead guilty to robbery. Said the court: "The question before us is whether Herman's other statements were made `in connection with' the plea offer." Id. at 796. Examining the background of rule 11(e)(6) in the light of prior decisions accepting and encouraging the practice of plea bargaining, the court stated:
Against this backdrop the inappropriateness of giving the rule an inhospitable reading becomes clear. Excluded statements must be made "in connection with" plea offers, but if we are overly exacting in deciding which statements come within the standard, we will deter the unrestrained candor that often produces effective plea negotiations. Defendants must be free to participate in open and uninhibited plea discussions, and their decisions to do so must not later be subjected to microscopic judicial examination to determine whether the statements were closely enough related to the plea offers. Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea.

Clearly, there can be little doubt that the federal courts deciding the cases above-cited would have given short shrift to the argument that Russell's offer to plead guilty in return for a sentencing concession should have been admissible because not made in connection with plea negotiations.
Russell, 614 So.2d at 610-11. We find Judge Smith's opinion in Russell to contain a thorough and accurate assessment of the federal court's analysis in Robertson, an analysis which this Court has relied upon in resolving issues raised under section 90.410. And, as did a unanimous First District in Russell, we find Judge Smith's *317 careful evaluation of Robertson helpful to our resolution of this case.

THIS CASE
We conclude that whether we consider Calabro's statements under a plain language analysis of section 90.410 or under the Robertson analysis, the outcome is the same and the statements are not admissible. Although Calabro's statements were made in open court rather than in a letter, we conclude that his awkward attempts to convey his desire for a disposition of his case by "some kind of plea agreement" are indistinguishable from the similar efforts of the defendants in Russell, McCray, and Debiasio, and all fall within section 90.410's provisions barring the admission of such evidence of an offer to plead guilty.
As the State has conceded at all stages of the litigation, including in this Court, Calabro's initial statement to the trial court that he would "like to avoid the trial and have some kind of plea agreement" clearly comes within section 90.410's prohibition of the admission of "[e]vidence of ... an offer to plead guilty." Although this offer was initiated by Calabro without any inducement by the State, it is apparent that neither the statute nor the rule contains any requirement that a defendant's offer to plead must be in response to a State offer before it will receive the protection of exclusion from evidence. Indeed, in common parlance an offer from either party often is the first step in negotiations. Neither the statute nor the rule limits its protection to counteroffers.
The question then becomes whether Calabro's statement made almost immediately thereafter that "I know this is unusual but unfortunately, I'm guilty of this" was a statement made in connection with his initial offer of a plea agreement as contemplated by the second sentence of section 90.410. Upon a plain reading of the arraignment transcript the trial court found that the two statements were related and accordingly held both statements inadmissible. We agree. Given the timing of the subsequent statement made seconds after the initial offer to plead and the defendant's obvious desire to avoid a trial we see no basis for overturning the trial court's ruling. It is apparent on the face of the transcript from defendant's arraignment that he was frustrated by the delay between his arrest and arraignment, as well as the failure of counsel to consult with him in the three weeks prior to arraignment while he was in jail. His frustration was only heightened when his trial was scheduled for months later, hence giving him the impression that the resolution of his case would be delayed for months while he sat in jail. In the face of this frustration, the transcript reflects he spoke out to the trial court without the advice of counsel of his desire for an earlier resolution by a plea agreement in which he would admit his guilt. While his statements may have been awkward and imprecise, they nevertheless contained the same ingredients that defense counsel might typically offer to the State in a negotiated plea for leniency, namely an admission of guilt and a willingness to plead guilty.
Our decision is not only faithful to the plain meaning of the statute and rule, but is also consistent with the discussion of Robertson and other federal decisions contained in Judge Smith's opinion in Russell. As the federal court cautioned in Robertson, courts should take care "to distinguish between those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement." 582 F.2d at 1367. Further, as noted by Judge Smith, the Robertson opinion expressly notes that under its analysis a unilateral offer by a defendant to plead *318 guilty in exchange for some government concession would not be admissible. 614 So.2d at 610-11.
Finally, we note that the Robertson court also emphasized that while no "magic words" were necessary, virtually all statements made by a defendant that are preceded by an explicit request for plea negotiations should be excluded from evidence. The Robertson opinion explains: "[W]hen such a preamble is delivered, it cannot be ignored. Indeed, even when such nascent overtures are completely ignored by the government, such express unilateral offers ought to be held inadmissible, if the context is consistent." 582 F.2d at 1367. The Robertson court's statements are especially relevant here since the arraignment transcript contains Calabro's initial expression of a desire for a "plea agreement" before he makes the statements admitting his guilt.

CONCLUSION
Hence, we conclude, consistent with the district courts holdings in Russell, McCray and Debiasio, that the trial court did not err in concluding that Calabro's statements fell within the exclusionary provisions of section 90.410 and the parallel criminal rule. In accord with the analysis set out above, we quash Calabro and approve Russell, McCray, and Debiasio. We remand for further proceedings consistent with this opinion.
It is so ordered.
QUINCE, C.J., and PARIENTE and LEWIS, JJ., concur.
BELL, J., dissents with an opinion, in which WELLS, J., and CANTERO, Senior Justice, concur.
BELL, J., dissenting.
I dissent for two reasons. First, we do not have jurisdiction to consider this case. Second, on the merits, I would abide by our well-established precedent and approve the Third District's decision in State v. Calabro, 957 So.2d 1210 (Fla. 3d DCA 2007). In Stevens v. State, 419 So.2d 1058 (Fla.1982), this Court unanimously adopted the federal test used in United States v. Robertson, 582 F.2d 1356 (5th Cir.1978), for determining whether a statement falls under section 90.410, Florida Statutes (2007), and Florida Rule of Criminal Procedure 3.172(i) and is, therefore, inadmissible. As we said in Stevens, "[t]o determine whether a statement is made in connection with plea negotiations, a court should use" the Robertson two-tier analysis. 419 So.2d at 1062. Moreover, in Stevens, we made it clear that "[u]nsolicited, unilateral utterances are not statements made in connection with plea negotiations." Id. (citing Blake v. State, 332 So.2d 676 (Fla. 4th DCA 1976)). The Third District assiduously followed this precedent. It applied the Robertson two-tier test to determine if Calabro's statements were made in connection with plea negotiations. In doing so, the Third District correctly concluded that Calabro's statement admitting guilt was an "unsolicited, unilateral utterance not made in connection with any plea negotiation and is therefore, admissible." Calabro, 957 So.2d at 1212.
Instead of simply applying the Robertson two-tier test to determine if Calabro's statement was made in connection with plea negotiations, the majority forges a new paradigm. It holds that "courts should first apply the plain meaning of the statute and rule, and if that analysis does not resolve the issue, the analysis in Robertson should be applied." Majority op. at 314. This new paradigm is both unnecessary and confusing. The majority does not specify in what situations the plain meaning of the statute and rule would not *319 resolve the issue and, therefore, when the analysis in Robertson should be applied.[4] The majority also does not explain how its plain meaning test materially differs from the Robertson two-tier test. Moreover, when supposedly applying Robertson, the majority never applies the two-tier test from Robertson; thus, it is now unclear what analysis from Robertson is applicable in the State of Florida. See majority op. at 317-18. Equally troubling is that the majority would disregard our precedent without conducting a stare decisis analysis explaining the need to do so.
I will first address jurisdiction. Then, I will address the merits.

I. THE LACK OF JURISDICTION
The majority relies on article V, section 3(b)(3) of the Florida Constitution as its basis for exercising jurisdiction. Article V, section 3(b)(3) provides that this Court may review any decision of a district court of appeal that "expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." However, the Third District's decision in Calabro does not expressly and directly conflict with the First District's decision in Russell v. State, 614 So.2d 605 (Fla. 1st DCA 1993), the Second District's decision in McCray v. State, 760 So.2d 988 (Fla. 2d DCA 2000), the Fourth District's decision in Debiasio v. State, 789 So.2d 1061 (Fla. 4th DCA 2001), or the First District's decision in Davis v. State, 842 So.2d 989 (Fla. 1st DCA 2003).
The purported conflict cases are factually distinguishable from Calabro. While Calabro involved a defendant's oral statements to a judge in open court, Russell, McCray, and Debiasio each involved a defendant's written letter to the state attorney prosecuting his case, the precise individual with authority to negotiate a plea. Furthermore, unlike Calabro, the letters in Russell, McCray, and Debiasio included specific requests each defendant wanted fulfilled in exchange for his guilty plea. For example, in Russell, where there had been ongoing plea negotiations between the defense and the prosecutor, the defendant wrote, "If I could be sentenced under the regular offense and you agree to give me three years and all my county time I will take it and won't go to trial." Russell, 614 So.2d at 606. And in Debiasio, the defendant wrote, "What I want to arrive at, as far as agreement, is that I completely cooperate with the State of Florida and its investigation of the previously named individuals, in return for a sentence that is to be served concurrently with the sentence I'm already serving...." Debiasio, 789 So.2d at 1062. Such quid pro quo requests, which are absent in Calabro, are the hallmark of plea negotiations.
The only case with remotely similar facts is Davis, but it too is distinguishable. The statement in Davis was oral and took place during a pretrial arraignment hearing in open court; but there had been previous plea negotiations. Davis, 842 So.2d at 991. And significantly, "Davis's statement was directly responsive to the *320 judge's invitation to negotiate...." Id. Indeed, before Davis made the statement at issue, the judge stated, "[A]t this point in time the State and you can negotiate back and forth." Id. at 990. No similar judicial invitation to negotiate occurred in Calabro.
Accordingly, there is no express and direct conflict between Calabro and the cases cited by the majority. Given this absence of express and direct conflict, we should discharge the case.

II. CALABRO SHOULD BE APPROVED
As stated earlier, if this Court had jurisdiction to consider this case, I would approve the Third District's decision in Calabro. I begin my merits analysis by detailing the statute and rule, the rationale for the statute and rule, and this Court's long-established precedent regarding the statute and rule. I then explain why the Third District's opinion is consistent with this long-established precedent. Finally, I discuss why stare decisis dictates no change to this precedent.

A. Section 90.410, Rule 3.172(i), and this Court's Precedent
Section 90.410, Florida Statutes, provides:
Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.
Similarly, rule 3.172(i) states that "[e]xcept as otherwise provided in this rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer."
This Court has explained that "[t]he most significant factor in the rule's adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise." Groover v. State, 458 So.2d 226, 228 (Fla. 1984) (quoting United States v. Davis, 617 F.2d 677, 683 (D.C.Cir.1979) (emphasis in Groover)). The purpose of the exclusionary rule is "to promote plea bargaining by allowing a defendant to negotiate without waiving fifth amendment protection." Id.
In Stevens v. State, 419 So.2d 1058 (Fla. 1982), this Court unanimously adopted the federal test used in Robertson as the sole test for determining whether a statement falls under section 90.410 and rule 3.172(i) and is, therefore, inadmissible. Specifically, in Stevens, this Court stated:
To determine whether a statement is made in connection with plea negotiations, a court should use
a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir.1978) (en banc); see also United States v. O'Brien, 618 F.2d 1234 (7th Cir.), cert. denied, 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980); United States v. Pantohan, 602 F.2d 855 (9th Cir.1979).
419 So.2d at 1062. Importantly, when adopting the two-tier Robertson test in Stevens, we explained that "[w]hether a defendant's subjective expectation of negotiating *321 a plea is reasonable depends on whether the state has indicated a willingness to plea-bargain and has in fact solicited the statement in question from the defendant." Id. (emphasis added). Indeed, contrary to the majority's holding today, this Court in Stevens expressly held that "[u]nsolicited, unilateral utterances are not statements made in connection with plea negotiations." Id. (citing Blake v. State, 332 So.2d 676 (Fla. 4th DCA 1976)).
Since we decided Stevens in 1982, the key question in this Court's analysis regarding section 90.410 and rule 3.172(i) has been whether the statement was made in connection with plea negotiations. And this Court has consistently used the Robertson two-tier test to answer that key question. See, e.g., Owen v. Crosby, 854 So.2d 182, 189 (Fla.2003); Richardson v. State, 706 So.2d 1349, 1353 (Fla.1998); Groover, 458 So.2d at 228; Bottoson v. State, 443 So.2d 962, 965 (Fla.1983); Anderson v. State, 420 So.2d 574, 576-77 (Fla. 1982). Indeed, this Court most recently applied the Robertson test to determine whether a statement was made in connection with plea negotiations and was, therefore, inadmissible under section 90.410 and rule 3.172(i) in Owen v. State, 986 So.2d 534 (Fla.2008).
Thus, as accurately summarized by Professor Ehrhardt, this Court has consistently
interpreted section 90.410 as applying in situations where there is actually "bargaining" or "negotiating" between both the state and the defendant. For example, unilateral and unsolicited statements by the defendant are not included within the section 90.410 prohibition. In Stevens v. State, the Florida Supreme Court adopted the following [Robertson two-tier test] to determine whether a statement has been made in connection with plea negotiations:
[A trial court should use] a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.
Charles W. Ehrhardt, Florida Evidence, § 410.1, at 314-15 (2008) (quoting Stevens, 419 So.2d at 1062).[5]

*322 B. Calabro Properly Applies Our Precedent
In Calabro, the Third District properly applied this Court's long-settled precedent. After listing the two prongs of the Robertson test, the Third District determined that Calabro's statement admitting guilt does not meet either prong of the test. Calabro, 957 So.2d at 1213. The Third District reasoned as follows:
At the time Calabro uttered the statement admitting his guilt neither side was in any position to negotiate a plea. Calabro had just been appointed a public defender, whom he met for the first time at the arraignment hearing. Calabro's counsel did not know the facts of the case nor the evidence against his client. The State never indicated a willingness to enter into a plea bargain with Calabro nor were negotiations taking place between the State and Calabro. Calabro's statement admitting his guilt was not made in response to any preliminary questions or in exchange for any concession from the State. Calabro, instead, made the statement without any prompting or inducement. Clearly, Calabro's unsolicited, unilateral statement was not made during a free and open discussion between the prosecution and the defense in an attempt to reach any compromise. See Groover, 458 So.2d at 228 (explaining that the purpose behind the exclusionary rule and statute is "the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise") (quoting United States v. Davis, 617 F.2d 677, 683 (D.C.Cir.1979) (emphasis added)). Therefore, we conclude that given the totality of the objective circumstances, Calabro could not have had a reasonable subjective belief that his statement was a part of any plea negotiation. See Owen, 854 So.2d at 190.
Id.
The Third District correctly concluded that Calabro's statement does not satisfy the two-tier Robertson test. Regarding the first tier, one could argue that Calabro's first statement that he would "like to avoid the trial and have some kind of plea agreement" indicates an actual subjective expectation to negotiate a plea at the time he made his later statement admitting guilt, thereby satisfying the first tier of the Robertson test. However, based upon the tenor of the overall conversation, one could also argue that Calabro was not expressing an actual expectation to negotiate a plea, but rather displeasure with his counsel and a desire to move up his trial date for a final determination of his case. Either way, Calabro's statement fails to satisfy the second tier of the Robertson test and is, therefore, admissible. Any possible subjective expectation to negotiate a plea on Calabro's part was not reasonable given the totality of the circumstances. The trial court had just appointed his counsel after a discussion of his financial situation, and the State had never indicated a willingness to plea bargain. Cf. Richardson, 706 So.2d at 1354 (finding subjective expectation reasonable given the State's repeated offers to negotiate a plea). Calabro simply made the statement admitting guilt *323 "spontaneously without any prompting or inducement." Stevens, 419 So.2d at 1062.
Additionally, it is important to recognize that the rationale for the exclusionary rule is not present in this case. As stated earlier, this Court has explained that "[t]he most significant factor in the rule's adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise." Groover, 458 So.2d at 228 (quoting United States v. Davis, 617 F.2d at 683) (emphasis in Groover). Here, there was no free and open discussion taking place between the State and Calabro in an attempt to reach a plea agreement or compromise. There were no plea negotiations that could have led to a settlement of the criminal case without a trial. Calabro simply chose to admit his guilt in open court without any prompting whatsoever. And no policy would be furthered by excluding that admission.[6]
Accordingly, given this Court's precedent adopting the two-tier Robertson test and the rationale underlying the exclusionary rule, the Third District correctly held that Calabro's second statement admitting guilt was an "unsolicited, unilateral utterance not made in connection with any plea negotiation and is therefore, admissible." Calabro, 957 So.2d at 1212. Having explained why the Third District's decision is consistent with long-standing Florida law, I will now discuss why our stare decisis jurisprudence dictates no change in that long-standing law.

C. Stare Decisis Dictates No Change
"This Court adheres to the doctrine of stare decisis," State v. J.P., 907 So.2d 1101, 1108 (Fla.2004), because the doctrine is important in "provid[ing] stability to the law and to the society governed by that law." State v. Gray, 654 So.2d 552, 554 (Fla.1995). Abiding by our precedent "is considered appropriate in most instances in order to produce consistency in the application of legal principles unless for some compelling reason it becomes appropriate to recede therefrom." Forman v. Fla. Land Holding Corp., 102 So.2d 596, 598 (Fla.1958). In North Florida Women's *324 Health & Counseling Services, Inc. v. State, 866 So.2d 612, 637 (Fla.2003), this Court explained that before overruling a prior decision, the Court has "traditionally asked several questions, including the following[:]"
(1) Has the prior decision proved unworkable due to reliance on an impractical legal "fiction"? (2) Can the rule of law announced in the decision be reversed without serious injustice to those who have relied on it and without serious disruption in the stability of the law? And (3) have the factual premises underlying the decision changed so drastically as to leave the decision's central holdings utterly without legal justification?
The answers to all three of these questions dictate that we continue to adhere to our precedent adopting the two-tier Robertson test as the sole method of determining whether a statement is inadmissible under section 90.410 and rule 3.172(i). First, there is no evidence that the two-tier test has proven unworkable due to a legal fiction. The test is clear and produces predictable rulings at the trial court level. Second, overruling our decision to adopt the two-tier test would seriously disrupt the stability of the law regarding plea negotiations. For over twenty-five years, prosecutors, law enforcement, and defense attorneys have relied upon our known and clear precedent when conducting plea negotiations, interrogations, and interviews.[7] Third, the factual premises underlying our decision to adopt the Robertson test have not changed. Neither the language of the statute nor the language of the rule has changed.
Given the answers to these three questions, the doctrine of stare decisis dictates that we continue to adhere to our 1982 decision in Stevens adopting the two-tier Robertson test for determining whether a statement is inadmissible under section 90.410 and rule 3.172(i). The majority has not articulated a single reason to hold otherwise. In fact, the majority does not even acknowledge that it is overturning long-settled precedent.

III. CONCLUSION
For over twenty-five years, this Court has consistently applied the two-tier Robertson test as the sole method for determining whether a statement was made in connection with plea negotiations and is, therefore, inadmissible under section 90.410 and rule 3.172(i). Our stare decisis jurisprudence dictates that we continue to do so. Accordingly, if this Court had jurisdiction to consider this case, I would approve the Third District's decision in Calabro because it properly applies our precedent and the two-tier Robertson test.
WELLS, J. and CANTERO, Senior Justice, concur.
NOTES
[1] The Third District commented in a footnote:

We also conclude that whether the statements are viewed as two separate statements or the continuation of a single statement, is of no consequence. The State's agreement not to introduce the initial statement made by Calabro does not constitute a waiver nor does it preclude the introduction of the remainder of Calabro's statement, which we have found was not made in connection with plea negotiations.
Id. at 1213 n. 1.
[2] The First District's Russell opinion also notes that shortly after the decision in Robertson, the federal rule was amended to eliminate the provision making an "offer to plead guilty" inadmissible while the Florida Evidence Code has continued to retain this provision. Id. at 610 n. 1.

At the time Robertson was decided in 1978, Federal Rule of Evidence 410 provided:
Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.
Fed.R.Evid. 410, Pub.L. 94-149, § 1(9), 89 Stat. 805 (1975). However, federal rule 410 has been amended. The federal rule currently reads:
Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
(1) a plea of guilty which was later withdrawn;
(2) a plea of nolo contendere;
(3) any statement made in the course of any proceedings under rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.
Fed.R.Evid. 410.
[3] As with the differing outcomes in Robertson and Russell, this Court has also reached different outcomes based upon differing facts in the case then being considered. In Richardson, for example, under circumstances distinguishable from Robertson, we held that statements made by Richardson to law enforcement officers were related to plea negotiations and therefore inadmissible under the statute and rule. 706 So.2d at 1354-56. On the other hand, in Bottoson v. State, 443 So.2d 962 (Fla. 1983), we held that the defendant's written confessions given by him to two ministers were not related to any plea negotiations and were admissible. Id. at 965.
[4] Given its extensive reliance on Russell v. State, 614 So.2d 605 (Fla. 1st DCA 1993), perhaps the majority is adopting the First District's conclusion that the plain meaning of the statute and rule should be applied when analyzing a defendant's unilateral offer to plead while the two-tier Robertson test should be applied when analyzing a statement made in connection with an offer. See Russell, 614 So.2d at 608-09. But if that is its intent, it is unclear why the majority applies both what it refers to as the plain meaning of the statute and rule as well as what it refers to as Robertson when analyzing Calabro's second statement, a statement the majority classifies as a statement made in connection with an offer to plead guilty. See majority op. at 317-18.
[5] A majority of federal courts also apply the Robertson two-tier test to determine whether a statement is made in connection with plea negotiations and is, therefore, inadmissible. See, e.g., United States v. Conaway, 11 F.3d 40, 42 (5th Cir. 1993); United States v. Little, 12 F.3d 215, 1993 WL 501570 (6th Cir. 1993); United States v. Guerrero 847 F.2d 1363, 1367 (9th Cir.1988); United States v. O'Brien, 618 F.2d 1234, 1240-41 (7th Cir.1980); United States v. Kearns, 109 F.Supp.2d 1309, 1315 (D.Kan.2000); United States v. Bridges, 46 F.Supp.2d 462, 466 (E.D.Va.1999); United States v. Fronk, 173 F.R.D. 59, 67 (W.D.N.Y. 1997); United States v. Melina, 868 F.Supp. 1178, 1181 (D.Minn. 1994); United States v. Swidan, 689 F.Supp. 726, 728 (E.D.Mich. 1988); see also United States v. Knight, 867 F.2d 1285,1288 (11th Cir.1989); United States v. Lau, 711 F.Supp. 40, 43 (D.Me.1989). But see United States v. Morgan, 91 F.3d 1193, 1195 (8th Cir.1996); United States v. Penta, 898 F.2d 815, 818 (1st Cir. 1990); United States v. Stein, 2005 WL 1377851 (E.D.Pa. 2005).

Additionally, a majority of states apply the Robertson two-tier test to determine inadmissibility, regardless of whether the state's evidence code includes a provision similar to the old federal rule and Florida's current rule or the current federal rule. See, e.g., Williams v. State, 491 A.2d 1129, 1132 (Del. 1985); People v. Jones, 219 Ill.2d 1, 300 Ill.Dec. 709, 845 N.E.2d 598, 610-11 (2006); State v. Little, 527 A.2d 754, 756 (Me. 1987); People v. Oliver, 111 Mich.App. 734, 756-57, 314 N.W.2d 740, 751 (1981), rejected in part on other grounds by People v. Williams, 422 Mich. 381, 373 N.W.2d 567 (1985); McKenna v. State, 101 Nev. 338, 705 P.2d 614, 618 (1985); State v. Curry, 153 N.C.App. 260, 569 S.E.2d 691, 693-94 (2002); State v. Genre, 712 N.W.2d 624, 634 (N.D.2006); State v. Frazier, 73 Ohio St.3d 323, 652 N.E.2d 1000, 1012 (1995); Commonwealth v. Calloway, 313 Pa.Super. 173, 459 A.2d 795, 800-01 (1983); State v. Traficante, 636 A.2d 692, 696 (R.I. 1994); State v. Dornbusch, 384 N.W.2d 682, 685 (S.D.1986); State v. Nowinski, 124 Wash.App. 617, 102 P.3d 840, 846 (2004). But see Martin v. State, 537 N.E.2d 491, 493 (Ind.1989); State v. Norwood, 287 Wis.2d 679, 706 N.W.2d 683, 691 (Ct.App.2005).
[6] The circumstances involved in Calabro are rather unique. However, in the most factually analogous case I could locate, People v. Sirhan, 7 Cal.3d 710, 102 Cal.Rptr. 385, 497 P.2d 1121 (1972), overruled on other grounds by Hawkins v. Superior Court, 22 Cal.3d 584, 150 Cal.Rptr. 435, 586 P.2d 916 (1978), the California Supreme Court held that the defendant's outburst was admissible as it did not further the policy of promoting plea bargaining. Like Calabro, Sirhan expressed an offer to plead and admitted guilt in open court while also expressing displeasure with his counsel. The California Supreme Court described the circumstances as follows:

During proceedings outside the presence of the jury defense counsel informed the court of a disagreement between himself and defendant regarding the calling of certain witnesses and stated that defendant desired to address the court. Defendant then stated that he wanted to plead guilty to first degree murder. The court asked him what he wanted to do about the penalty, and he replied, "I will ask to be executed, sir." The court inquired why he wanted to do "this," and he answered. "That is my prerogative." The court stated, "No, it isn't. Now, when we come to accepting a plea, you have to give me a reason." Defendant then stated "I killed Robert Kennedy wilfully, premeditatively, with twenty years of malice aforethought; that is why."
Sirhan, 102 Cal.Rptr. 385, 408, 497 P.2d at 1144. In determining that these statements were admissible, the court reasoned:
[T]he Legislature intended to exclude solely withdrawn guilty pleas and bona fide offers to plead guilty and did not intend to exclude outbursts by an angry defendant during the trial even if accompanied by an expression of a desire to plead guilty. Such outbursts, of course, would not lead to the settlement of the criminal case without a trial and ordinarily would not end the trial but instead would merely disrupt it.
Id. at n. 23.
[7] It is unclear how the majority's holding will affect interrogations by law enforcement. For example, would a defendant's admissions to police officers who the defendant actually knew had no authority to negotiate plea agreements now fall within the plain meaning of "statements made in connection with any of the pleas or offers"? § 90.410, Fla. Stat.; cf. Owen v. State, 986 So.2d at 545.