# Supreme Court of Florida

_____

No. SC15-1364
_____

**RICHARD TODD ROBARDS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[April 6, 2017]

PER CURIAM.

Richard Todd Robards, also known as Damien Robards, appeals an order of the circuit court denying his motion to vacate judgment of two first-degree murder convictions and sentences of death filed under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from sentences of death, we have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the postconviction court's order to the extent that it denies Robards relief based upon his claim of ineffective assistance of guilt phase counsel, but grant Robards a new penalty phase proceeding pursuant to Hurst v.

State (Hurst), 202 So. 3d 40 (Fla. 2016), petition for cert. filed, No. 16-998 (U.S. Feb. 13, 2017).

## FACTS AND PROCEDURAL BACKGROUND

### Trial and Direct Appeal Proceedings

Robards was found guilty of two counts of first-degree murder for the 2006 deaths of Frank and Linda Deluca. Robards, the couple's personal trainer, murdered them during the course of a robbery in which he stole personal belongings of the Delucas, including a safe containing more than $88,000. The Delucas died of multiple sharp force wounds, and their home was set on fire after they were murdered. The facts of the offenses are set forth in detail in this Court's opinion affirming Robards' convictions and sentences on direct appeal. See Robards v. State, 112 So. 3d 1256 (Fla. 2013).

The guilt phase of the trial took place from May 18 to May 21, 2010. The guilt phase was followed by a brief penalty phase on May 25, 2010, during which the State presented testimony from Linda Deluca's sister, and the defense presented character evidence about Robards' personal and professional life using testimony from family members, friends, fellow inmates, and former clients. Id. at 1263. The jury recommended the death penalty for each murder by a vote of seven

to five.  After three <u>Spencer</u>[1] hearings, during which mental health mitigation was offered, the trial court sentenced Robards to death.  The facts revealed during the <u>Spencer</u> hearings were explained at length on direct appeal, and the sentencing proceeded as follows:

> In its sentencing order, the court found that four aggravating circumstances were proven by the State beyond a reasonable doubt and assigned each one of them great weight: (1) Robards was convicted of a prior capital felony (based on the contemporaneous murder of the second victim); (2) Robards committed each murder for pecuniary gain; (3) Robards committed each murder while engaged in a commission of a robbery (merged with pecuniary gain); and (4) each murder was especially heinous, atrocious, or cruel (HAC).
>
> Although the jury did not receive evidence of mental health mitigation, the trial court weighed the evidence that was presented at the <u>Spencer</u> hearing and considered as statutory mitigation the following: (1) whether Robards suffered from an extreme mental or emotional disturbance; and (2) whether Robards suffered from an impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.  The court rejected both of these statutory mitigating circumstances and explained its rationale in its sentencing order.  The trial court did weigh Robards' mental health as a nonstatutory mitigating circumstance.
>
> The trial court considered a total of twelve nonstatutory mitigating circumstances.  The trial court rejected Robards' argument that Florida's budgetary crisis was a reason for not imposing the death penalty and his argument that the closeness of the jury's vote was a reason for not imposing the death penalty.  Of the remaining ten mitigating circumstances, the trial court gave each one some weight: (1) family history; (2) no plan to murder; (3) good general conduct while in custody; (4) capacity to form positive relationships; (5) remorse and potential for rehabilitation; (6) traumatic injury based on PET scan and PET scan brain image comparison; (7) effect of steroids on brain injury and effect of steroids generally; (8) use of prescribed

---

1.  <u>Spencer v. State</u>, 615 So. 2d 688 (Fla. 1993).

steroids, interactions with other prescribed drugs, and withdrawal;
(9) mental health issues; and (10) history of steady employment. All
of the trial court's findings were as to each murder.

Id. at 1264-66.

On direct appeal, Robards raised four issues: (1) whether penalty phase counsel provided ineffective assistance; (2) whether a seven-to-five vote recommending death was unconstitutional; (3) whether the trial judge departed from judicial neutrality in suggesting that the State pursue the prior capital felony aggravating circumstance; and (4) whether improper comments by the prosecutor during closing argument warranted a new trial. Ultimately, this Court rejected all claims raised and affirmed Robards' convictions and sentences of death. See Robards, 112 So. 3d at 1273.

**Postconviction Proceedings**

Robards filed a timely motion for postconviction relief raising six claims: (1) trial counsel was ineffective in failing to object to or attempt to suppress testimony, evidence, or prosecutorial argument regarding his offer to "make a deal" with Detective Anthony Monte and any statements related to that offer; (2) trial counsel failed to diligently, timely, and reasonably investigate mitigation evidence; (3) trial counsel's failure to object to prejudicial remarks during the prosecutor's closing argument constituted ineffective assistance of counsel; (4) the combination of the procedural and substantive errors during the guilt and penalty

- 4 -

phases deprived Robards of a fair trial; (5) section 945.10, Florida Statutes (2006), which prohibits a defendant from knowing the identity of the execution team members, is unconstitutional; and (6) Robards may be incompetent at the time of execution. Following a Huff[2] hearing, the circuit court granted an evidentiary hearing on claims one and two. During the evidentiary hearing, the court heard testimony from guilt phase counsel, Larry Hoffman; penalty phase counsel, Richard Watts; two medical experts who testified during the Spencer hearings, Dr. Joseph Wu and Dr. Robert Berland; former assistant public defender, Ronald Eide; and two of Robards' acquaintances.

Following the evidentiary hearing, the circuit court denied Robards' motion for postconviction relief in its entirety. Robards appeals the denial of his motion raising three issues: (1) trial counsel was ineffective for failing to object to or attempt to suppress the testimony, evidence, or prosecutorial argument regarding Robards' offer to make a deal; (2) trial counsel failed to diligently, timely, and reasonably investigate the mitigation evidence and make an adequate penalty phase presentation to the jury; and (3) cumulative error deprived Robards of a fair trial. Additionally, Robards claims that he is entitled to relief based on the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016), as well as this Court's decisions in Hurst and related cases.

---

2. Huff v. State, 622 So. 2d 982 (Fla. 1993).

We affirm the denial of relief as to Robards' ineffective assistance of guilt phase counsel claim, but because we conclude that Robards is entitled to a new penalty phase proceeding under <u>Hurst</u>, we decline to address his claims regarding the ineffective assistance of penalty phase counsel and cumulative error.

## ANALYSIS

### Ineffective Assistance of Guilt Phase Counsel

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and the defendant was prejudiced by counsel's deficiency such that there is a reasonable probability the result of the proceeding would have been different absent the error. <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). Both prongs of the <u>Strickland</u> test present mixed questions of law and fact. Thus, we employ a mixed standard of review, deferring to the trial court's factual findings that are supported by competent, substantial evidence, and reviewing the trial court's legal conclusions de novo. <u>See</u> <u>Sochor v. State</u>, 883 So. 2d 766, 771-72 (Fla. 2004).

"Judicial scrutiny of counsel's performance must be highly deferential." <u>Strickland</u>, 466 U.S. at 689. Further, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." Id. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, a court "need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied." Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986).

Robards argues that guilt phase trial counsel rendered deficient performance for failing to object to or attempt to suppress testimony, evidence, and prosecutorial argument regarding Robards' offer to make a deal with Detective Monte. The record reflects that Robards made a phone call from the Pinellas County Jail to Detective Monte on August 15, 2006, and left him the following voicemail message, which was introduced into evidence during the State's case-in-chief:

> Detective Monte, this is Damien Robards. I'm down here at the
> Pinellas County Jail. It's about two o'clock. Listen, if you can come
> here and talk to me, and you guys are ready to make a deal, come in
> and talk to me, all right? Thanks.

During trial, Detective Monte testified that he went to see Robards in response to the voicemail message and that Robards said he wanted to make a deal. However, when Detective Monte informed Robards that he was not in a position to offer him

a deal, Robards spoke no further of it. At the time of the call, Robards was incarcerated for possession of marijuana, yet Detective Monte testified he believed that Robards' comments related to the homicide case involving the Delucas. The State referenced this statement during opening and closing arguments.

Robards argues that the voicemail message and conversation with Detective Monte constitute inadmissible plea negotiations under section 90.410, Florida Statutes (2014),[3] and Florida Rule of Criminal Procedure 3.172(i).[4] Robards asserts that guilt phase counsel's performance was deficient because he failed to object to the State's introduction of inadmissible plea negotiations. Consequently, we examine whether the communications between Robards and Detective Monte amounted to plea negotiations and, if so, whether counsel's failure to object was deficient.

---

3. Section 90.410, Florida Statutes, declares:

Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.

4. Florida Rule of Criminal Procedure 3.172(i) provides, "Except as otherwise provided in this rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer."

"Where a party admission is not clearly part of an attempt to negotiate a plea bargain, this Court has adopted a two-tier analysis for determining whether a statement falls within the exclusion under rule 3.172(i)." Schoenwetter v. State, 46 So. 3d 535, 546-47 (Fla. 2010) (citing Calabro v. State, 995 So. 2d 307, 313-14 (Fla. 2008)).  A court must first determine "whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion." Id. (quoting Richardson v. State, 706 So. 2d 1349, 1353 (Fla. 1998)).  Second, the court must discern "whether the accused's expectation was reasonable given the totality of the circumstances." Id. (quoting Richardson, 706 So. 2d at 1353) (internal quotation marks omitted).  Unsolicited, unilateral statements do not create a reasonable expectation of involvement in plea negotiations.  See Bottoson v. State, 443 So. 2d 962, 965 (Fla. 1983).

Robards contends that his statement exhibited a subjective expectation to negotiate a plea deal because the conversation ended after Detective Monte informed Robards that he did not have the power to make a deal.  Robards further asserts that his expectation was reasonable because he had previously spoken with Detective Monte about the murder of the Delucas.  Furthermore, Robards argues he was prejudiced because it is a fundamental duty of counsel to preserve conceivable errors for appeal.

During the postconviction evidentiary hearing, guilt phase counsel Hoffman testified regarding the voicemail recording, saying he thought it was related to the drug case for which Robards was incarcerated at the time. Hoffman attested that he did not object to the evidence or argument about the voicemail because he did not believe the statement was objectionable. In lieu of objecting, he decided to attack the evidence on cross-examination of Detective Monte by attempting to show that the detective had no idea which case Robards was referring to during the call.

The postconviction court found that any subjective expectation by Robards about entering into a plea negotiation was not reasonable considering the totality of the circumstances. First, the call was made while Robards was under arrest for a drug incident; and second, the message was an unsolicited voicemail from a monitored jail line offering to make a deal to an unspecified crime. The court thus determined that the communication was simply an unsolicited, unilateral offer from which Robards could have had no reasonable expectation of negotiating a plea.

Because the voicemail and resulting conversation did not amount to a plea negotiation, the postconviction court observed that the statement could be offered against Robards as a party admission. See § 90.803(18)(a), Fla. Stat. (2014). Therefore, the court found counsel's conclusion that the statement was not

- 10 -

objectionable to be legally correct. Given the totality of the circumstances, and especially the fact that Robards had not even been arrested in connection with the murders, we conclude that Robards' expectation about entering into a plea negotiation was not reasonable. Furthermore, we agree that Hoffman's decision not to object did not constitute deficient performance because the statement was admissible. See Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection.").

Further, even if counsel should have objected to the introduction of the voicemail or attempted to suppress the evidence, we conclude that Robards cannot demonstrate prejudice under Strickland. The presence or absence of the voicemail is minimal considering the overwhelming evidence linking Robards to the Delucas' murders. Therefore, there is no reasonable probability that the outcome of the guilt phase would have been different had counsel's objection been sustained or had counsel obtained a trial court ruling suppressing the voicemail. We set forth the compelling evidence of Robards' guilt on direct appeal, stating:

> Among the more substantial evidence is that Robards' fingerprints were found at the crime scene on a piece of newspaper dated within one day of the murders. What is more, Frank Deluca tried to fight his attacker, and Robards' DNA was found underneath his fingernails. The only other DNA that was identified during the fingernail analysis of Frank Deluca was that of the other murder victim, Frank Deluca's wife. Additionally, Robards talked about the Delucas' safe for weeks before the murders, told many people that he had access to it, and tried to recruit help from Shane Harper to steal it. Then, after Robards murdered the Delucas, he made Robert Kenney an unwitting partner

- 11 -

in removing the safe from the Delucas' home. In light of such compelling evidence of guilt, Robards is not entitled to relief.

Robards, 112 So. 2d at 1271. Thus, even if counsel's performance had been deficient, Robards was not prejudiced. Accordingly, we affirm the postconviction court's denial of relief as to this claim.

## Hurst Relief

In Hurst v. Florida, the United States Supreme Court held that Florida's capital sentencing scheme is unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough." 136 S. Ct. at 619. On remand, we held that "in addition to unanimously finding the existence of any aggravating factor, the jury must also unanimously find that the aggravating factors are sufficient for the imposition of death and unanimously find that the aggravating factors outweigh the mitigation before a sentence of death may be considered by the judge." Hurst, 202 So. 3d at 54. Moreover, we concluded that "in order for a death sentence to be imposed, the jury's recommendation for death must be unanimous." Id. Further, we determined that Hurst error is capable of harmless error review. Id. at 68. In Mosley v. State, 41 Fla. L. Weekly S629 (Fla. Dec. 22, 2016), we held that Hurst applies retroactively to defendants whose sentences became final after the United States Supreme Court issued its opinion in Ring v.

- 12 -

Arizona, 536 U.S. 584 (2002). Robards' convictions and sentences became final after Ring, thus Hurst is applicable to him.

On direct appeal, Robards challenged the constitutionality of the jury's bare majority recommendation of death, but based on existing precedent at the time, we concluded that the claim was without merit. See Robards, 112 So. 3d at 1267. In his postconviction appeal, Robards again claims he is entitled to relief from his death sentences based upon the seven-to-five jury recommendation of death. Therefore, as Hurst requires, we consider whether the error during Robards' penalty phase proceeding was harmless.

"[I]n the context of a Hurst error, the burden is on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the jury's failure to unanimously find all the facts necessary for imposition of the death penalty did not contribute to [the] death sentence." Hurst, 202 So. 3d at 68. As applied to the right to a jury trial with regard to the facts necessary to impose the death penalty, it must be clear beyond a reasonable doubt that a rational jury would have unanimously found that there were sufficient aggravating factors and that the aggravating factors outweighed the mitigating circumstances.

We conclude that the State cannot establish that the error in Robards' case was harmless beyond a reasonable doubt. The jury in this case did not make any of the requisite factual findings, and the vote to impose a sentence of death was seven

- 13 -

to five, the bare minimum to recommend death prior to Hurst. The jury was instructed to consider four aggravating circumstances and two nonstatutory mitigating circumstances. Although the prior violent felony aggravating circumstance was found unanimously by virtue of Robards' conviction for the first-degree murder of the second victim, and while the jury may have found this aggravator to be sufficient to qualify Robards for the death penalty, it is impossible to determine whether the jury unanimously found it to be sufficient. Similarly, there is no way of knowing if the jury found any of the other aggravating circumstances unanimously, or if the jury unanimously found such aggravators to be sufficient to qualify for the death penalty. Further, we cannot determine whether the jury unanimously concluded that there were sufficient aggravating factors to outweigh the mitigating circumstances. Given the seven-to-five recommendation for death, it is impossible for us to conclude that the Hurst error in this case was harmless beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, we affirm the denial of postconviction relief as to Robards' claim alleging that counsel was ineffective during the guilt phase of the trial. However, we must vacate Robards' sentences of death and remand for a new penalty phase proceeding under Hurst.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.

PARIENTE, J., concurs with an opinion.

POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring.

I agree that Robards is entitled to Hurst relief and should, therefore, receive a new penalty phase. I write to emphasize the woeful inadequacy of Robards' penalty phase counsel who failed to present the jury with evidence of substantial mental health mitigation, which reinforces the necessity for a new penalty phase in this case. As I explained in my concurring opinion in Robards' direct appeal, "the record before this Court raise[d] questions about" whether Robards' penalty phase counsel was ineffective in presenting mental health mitigation, but "further factual development [was] necessary in order for this claim to be fairly and properly adjudicated." Robards, 112 So. 3d at 1274 (Pariente, J., concurring). The postconviction proceedings below have now revealed the breadth of mitigation evidence that penalty phase counsel failed to reasonably investigate. Consequently, the jury in Robards' case—which recommended his two death sentences by narrow votes of seven to five—was not presented with the full picture of Robards' life when it made its recommendations. See id. at 1263.

- 15 -

What we now know as a result of the postconviction proceedings is that at the time Robards' penalty phase began, penalty phase counsel had access to Robards' medical and psychiatric records, competency records, and the results of an initial Positron Emission Tomography (PET) scan showing brain abnormalities. Additionally, penalty phase counsel was aware of records regarding motorcycle accidents in which Robards had sustained injuries. Penalty phase counsel also knew from the appointed mitigation specialist that there was evidence Robards suffered sexual and physical abuse during his childhood. Despite this knowledge of substantial mitigation, penalty phase counsel did not further investigate Robards' background and proceeded to the penalty phase.

Penalty phase counsel acknowledged in his testimony during the evidentiary hearing that the full extent of mental health mitigation was not known until "months after" the penalty phase jury recommended that Robards be sentenced to death. In this regard, penalty phase counsel did not have a full picture of Robards' background before he decided against presenting mental health mitigation to the penalty phase jury. Consequently, the penalty phase jury was similarly denied the full picture of the mitigating circumstances in Robards' life that may have affected its weighing of the aggravation and mitigation when deciding whether Robards was deserving of the ultimate punishment.

Instead, the mental health mitigation was developed during three hearings held before the trial judge over a period of months after the penalty phase jury made its recommendations. The investigation of Robards' mental health mitigation during these months revealed that Robards suffered from traumatic brain injury and toxic brain exposure. Moreover, testimony by a PET specialist revealed that Robards began using steroids at age fifteen and used them continuously for decades. A psychopharmacologist testified that Robards may have been suffering from steroid withdrawal during the time of the murders, and evidence was presented demonstrating Robards' paranoia, violent behavior, delusions, and psychotic disturbances. Robards' sister's testimony during one of the hearings also revealed that Robards' brothers physically and emotionally tormented him growing up, and that Robards was sexually abused in a neighbor's home as a child.

Thus, as penalty phase counsel acknowledged during the postconviction proceedings, the picture of Robards' childhood that the penalty phase jury was presented with was incomplete. The penalty phase jury was not afforded the opportunity to evaluate this testimony against other testimony that depicted Robards as a happy child. "The jury vote in this case was seven to five in favor of a death recommendation. The swaying of the vote of only one juror would have made a critical difference here." Phillips v. State, 608 So. 2d 778, 783 (Fla. 1992).

For all these reasons, it is clear that a new penalty phase is mandated not only on the basis of the harmful Hurst error in this case, but also as a result of the ineffective assistance of Robards' penalty phase counsel.

POLSTON, J., concurring in part and dissenting in part.

I concur with the majority's decision except its vacating of the death sentence pursuant to Hurst.

CANADY and LAWSON, JJ., concur.

An Appeal from the Circuit Court in and for Pinellas County,
        Joseph Anthony Bulone, Judge - Case No. 522006CF018453XXXXNO

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, and Raheela Ahmed, Maria Christine Perinetti, and Donna Ellen Venable, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

        for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Stephen D. Ake, Assistant Attorney General, Tampa, Florida,

        for Appellee